**Odessa GREGORY, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 91–912.**

United States Court of Veterans Appeals.

May 13, 1993.

See also 2 Vet.App. 295.

William G. Smith, Los Angeles, CA, was on the supplemental brief, for appellant.

James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Michael A. Leonard, Washington, DC, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and KRAMER and STEINBERG, Associate Judges.

KRAMER, Associate Judge:

Appellant, Odessa Gregory, appeals a March 12, 1991, decision of the Board of Veterans' Appeals (BVA or Board) which denied her recognition as the surviving spouse of the veteran for purposes of Department of Veterans Affairs death benefits. The BVA ruled against appellant pursuant to 38 C.F.R. § 3.53(a) (1992) on the grounds that she was not without fault in failing to cohabit continuously with the veteran from the date of their marriage to the date of the veteran's death. This Court has jurisdiction under 38 U.S.C.A. § 7252(a) (West 1991).

## Facts

The veteran had service in the U.S. Army from September 1940 to March 1946. Appellant submitted her original "application for compensation or pension by widow or child" in June 1952 to the Veterans' Administration (now Department of Veterans Affairs) (VA). R. at 9–12. She indicated that she and the veteran had married on January 14, 1947, and "seperated [sic] on 7/4/51," and that she had been "awarded divorce on mental cruelty ... on 2/8/52." R. at 1, 9, 10. She also indicated that the veteran had been killed on April 27, 1952. R. at 7, 9. The evidence of record reflects that appellant was granted an interlocutory judgment of divorce on February 8, 1952, permitting visitation of the parties' minor son by the veteran "provided that at the time of visiting ... [the veteran] ... is not under the influence of intoxicating liquor." R. at 3. No final judgment of divorce was entered prior to the veteran's death. *Id.* The BVA decision on appeal notes that in August 1952, pursuant to her application, the VA requested additional information in order to process her claim, but that appellant failed to respond. *Odessa Gregory in the Case of Leonard L. Gregory*, BVA 91–07835, at 2 (Mar. 12, 1991).

Appellant reopened her claim in May 1988 by submitting another "application for dependency and indemnity compensation or death pension by a surviving spouse or child." R. at 13–16. She indicated that her marriage to the veteran had ended by his death and listed three marriages subsequent to her marriage to the veteran, all of which ended in divorce, with the first remarriage occurring on July 4, 1952. R. at 13. Appellant responded "yes" to the question whether she had lived continuously with the veteran from the date of their marriage to the date of his death, R. at 14, and responded "no" when asked if she had previously filed a claim as a surviving spouse with the VA, R. at 16. She also indicated that she had been receiving Social Security Administration (SSA) widow's benefits since March 1988, and attached a copy of the SSA "notice of award." R. at 15, 17.

Following the denial of appellant's claim by a VA regional office, she filed a Notice of Disagreement dated March 11, 1989. R. at 20. She stated, "In [my son's] ... haste to fill out the initial paperwork when I filed for this claim, [he] ... incorrectly listed a 'marriage' " on July 4, 1952. *Id.* In response to a request from the VA for more information, appellant submitted a letter dated May 4, 1989. R. at 23. She stated that the veteran had

suffered from "shell shock" and shrapnel wounds received during the war.... He had a drinking problem and was temperamental because of both physical and mental pain. There were times we "broke up" because of these problems. Most of the time, however, these separations consisted of nothing more than me going to my mother's house to spend the night.

*Id.* She also stated that she had obtained the divorce from the veteran in February 1952 because she "was worried that [he] ... might try to obtain sole custody [of their son]," and that "[a]bout the longest we were ever separated was from December 1951 through February 1952." *Id.* Along with the letter, appellant submitted two affidavits attesting that appellant and the veteran had lived together except for a brief separation in 1952. R. at 24–27. The VA issued an administrative decision dated June 9, 1989, which found that appellant and the veteran did not cohabit continuous-

ly from the date of their marriage to the date of the veteran's death. R. at 29–32.

On October 16, 1989, appellant filed a VA Form 1–9 substantive appeal to the BVA on which she stated that her "break ups" with the veteran were always temporary and that she saw an attorney in December 1951 because "[t]here were times when my husband would come by the house in a very intoxicated state and take our son.... I wanted to obtain sole custody ..., and I thought the only way to do this was through an attorney." R. at 38. She also submitted another affidavit attesting to the brevity of the parties' separations. R. at 39. On December 6, 1989, appellant testified at a hearing before the VA regarding the veteran's drinking problem, R. at 43–44, 47, which, she stated, had endangered the life of their son on at least one occasion, R. at 43. The hearing officer's decision was issued January 8, 1990, denying appellant recognition as the veteran's widow. R. at 52.

Regarding the issue of continuous cohabitation, the BVA decision on appeal stated, in pertinent part:

Contradictory information was provided to the VA by ... appellant in her re-opened claim in May 1988 to the effect that she and the veteran were not separated at the time of his death and lived together continuously.... After an evaluation of the information ..., the Board is persuaded to assign greater weight to the information supplied by ... appellant in 1952, shortly after the veteran's death and the other contemp[o]raneous evidence of record. It is concluded by the Board therefore that the veteran and ... appellant were separated beginning in July 1951 and that ... appellant had sought a termination of the marital relationship by obtaining an interlocutory decree of divorce from the veteran.

*Gregory*, BVA 91–07835, at 6.

In denying appellant recognition as the surviving spouse of the veteran, the BVA stated, as relevant here:

[I]n order for ... appellant to be recognized as the surviving spouse of the veteran, it is necessary that she have been without fault in the separation between herself and the veteran. In this regard, it must be shown that she was without fault both as to the initial separation and the continuation thereof. The record discloses that ... appellant sought to terminate her marriage to the veteran and, contrary to her present assertions, the Board is unconvinced that she and the veteran reconciled subsequent to the interlocutory decree and prior to the veteran's death.... In light of the foregoing, it appears that by ... appellant's actions, she was not completely free of fault in the separation with the veteran and the continuation thereof.

*Id.*

### Statutory and Regulatory Provisions

Statutory entitlement to death benefits as a "surviving spouse" of the veteran requires, inter alia:

[that the] person ... lived with the veteran continuously from the date of marriage to the date of the veteran's death (except where there was a separation which was *due to the misconduct of, or procured by, the veteran without the fault of the spouse*)....

38 U.S.C.A. § 101(3) (West 1991) (emphasis added). Pursuant to this statutory authority, the VA promulgated 38 C.F.R. § 3.50, which, as relevant here, is identical to the language of the statute. *See* 38 C.F.R. § 3.50(b)(1) (1992). The VA also promulgated 38 C.F.R. § 3.53 pursuant to its general rule-making power. *See* 38 U.S.C.A. § 501(a)(1) (West 1991) ("The Secretary [of Veterans Affairs (Secretary)] has authority to prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the [VA] and are consistent with those laws, including ... regulations with respect to the nature and extent of proof and evidence and the method of taking and furnishing them in order to establish the right to benefits under such laws...."). Section 3.53 provides, inter alia:

(a) *General.* The requirement that there must be continuous cohabitation from the date of marriage to the date of

death of the veteran will be considered as having been met when the evidence shows there was no separation due to the fault of the surviving spouse. Temporary separations which ordinarily occur, including those caused for the time being through fault of either party, will not break the continuity of the cohabitation.

(b) *Findings of fact.* The statement of the surviving spouse as to the reason for the separation will be accepted in the absence of contradictory information.

38 C.F.R. § 3.53 (1992).

### Analysis

■ In its decision, the BVA found, as a matter of fact, that appellant had not lived with the veteran continuously from the date of their marriage to the date of the veteran's death. *Gregory,* BVA 91–07835, at 6. Despite appellant's characterization of her separations from the veteran as temporary, the Court finds, based on appellant's 1952 application in which she indicated that she had separated in July 1951 and was divorced in February 1952, a "plausible" basis in the record for the BVA's factual determination and therefore, cannot conclude that this determination is clearly erroneous. *See* 38 U.S.C.A. § 7261(a)(4) (West 1991); *Gilbert v. Derwinski,* 1 Vet. App. 49, 53 (1990).

■ Title 38, U.S.C.A. § 101(3) and 38 C.F.R. § 3.50(b)(1) set forth a two-part test to determine whether a spouse will be deemed to have continuously cohabited with the veteran when there has been a separation. The spouse must not only be free of fault at the time of the separation, but it must be found that the separation "was due to the misconduct of, or procured by, the veteran." Given the plain meaning of the statute and the inconsistency of § 3.53(a) which eliminates the second part of the test, the Court holds the first sentence of § 3.53(a) unlawful, as exceeding the authority of the Secretary. *See* 38 U.S.C.A. § 7261(a)(3)(C) (West 1991); *Gardner v. Derwinski,* 1 Vet.App. 584, 588 (1991).

Pursuant to the first part of the test of § 101(3) and § 3.50(b)(1), the surviving spouse is deemed to have continuously cohabited with the veteran if the separation was not due to the fault of the surviving spouse. The only evidence of fault pointed to by the BVA was that appellant had sought to terminate her marriage to the veteran and that she had failed to reconcile with the veteran following entry of the interlocutory decree and prior to the veteran's death. *See Gregory,* BVA 91–07835, at 6.

■ The language of § 101(3) and § 3.50(b)(1) does not indicate that the without-fault requirement is a continuing one. Rather, under this language, fault or the absence of fault is to be determined based on an analysis of conduct at the time of the separation. Certain conduct subsequent to the time of separation may be relevant in an appropriate case with respect to the question of fault at the time of separation, but the mere acts of seeking divorce and failing to reconcile are not in and of themselves relevant to such question, and, standing alone, do not constitute evidence of fault at the time of separation. Certainly, if a spouse has been physically and emotionally abused and separates from the abuser, the abused spouse's acts of initiating a divorce and refusing to reconcile would not be competent evidence to demonstrate fault on the part of the abused spouse at the time of the separation. *Cf. Espiritu v. Derwinski,* 2 Vet.App. 492, 294 (1992). The Court concludes that since there is no evidence of fault on the part of appellant at the time of the separation, she was not, as a matter of law, at fault at the time of the separation under § 101(3) and § 3.50(b)(1).

Upon remand, the Board shall make specific findings regarding whether the separation "was due to the misconduct of, or procured by, the veteran." In applying statutory § 101(3) and regulatory § 3.50(b)(1), the BVA shall also apply 38 C.F.R. § 3.53(b) ("statement of the surviving spouse as to the reason for the separation will be accepted in the absence of contradictory information") in that the record here shows that appellant had stated in her May 1989 letter that her separation

from the veteran had been due to his "drinking problem" and "temperamental" conduct, and on her October 1989 Form 1–9 that she had sought a divorce due to the veteran's pattern of returning home "in a very intoxicated state," and that the 1952 divorce decree had specifically prohibited the veteran from visiting his son while the veteran was "under the influence of intoxicating liquor." In applying § 3.53(b), the BVA shall address whether there is "contradictory information" in the record regarding the appellant's statements as to the reason for the separation, including the effect, if any, that the credibility issues raised by her 1952 and 1988 applications have on the application of this provision.

The Court also notes that the record on appeal contains an SSA "notice of award" which indicates that appellant was found entitled to widow's benefits as a result of her marriage to the veteran. R. at 17. Since appellant apparently appended it to her 1988 application, the VA was on notice of the existence of the SSA records. The VA shall obtain such records underlying the award, as they may be instructive regarding the events surrounding appellant's separation from the veteran, and the BVA shall discuss in the decision on remand the relevance and significance of those records. *See* 38 U.S.C.A. §§ 5106, 5107(a) (West 1991); *Murincsak v. Derwinski,* 2 Vet. App. 363, 370–71 (1992); *Masors v. Derwinski,* 2 Vet.App. 181, 187 (1992).

■ Finally, the Board is reminded that as to material issues, it must be guided by whether there is a preponderance of the evidence against the appellant. *See Gilbert,* 1 Vet.App. at 53–55. The BVA decision stated in one of its findings of fact that "[t]he evidence fails to conclusively establish that either party sought a reconciliation prior to the veteran's death or that such a reconciliation had taken place." *Gregory,* BVA 91–07835, at 4. The Court notes that the phrase "conclusively establish" reveals that the Board may have applied an incorrect standard of proof.

### Conclusion

For the reasons stated above, the BVA decision of March 12, 1991, is VACATED and REMANDED for proceedings consistent with this opinion.