Willie P. CAMPHOR, Appellant,

v.

Jesse BROWN, Secretary of Veterans
Affairs, Appellee.

No. 92–631.

United States Court of Veterans Appeals.

Aug. 30, 1993.

Oliver W. Nelson, Rockford, IL, was on the pleadings, for appellant.

Robert E. Coy, Acting Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Karen P. Galla, Washington, DC, were on the pleadings, for appellee.

Before KRAMER, FARLEY, and MANKIN, Judges.

FARLEY, Judge:

This is an appeal from a January 17, 1992, decision of the Board of Veterans' Appeals (BVA or Board) which determined that appellant had not submitted new and material evidence to warrant the reopening of her claim of entitlement to recognition as a veteran's surviving spouse for the purpose of receiving Department of Veterans Affairs (formerly Veterans' Administration) (VA) benefits. A timely appeal to this Court followed. The Court has jurisdiction pursuant to 38 U.S.C.A. § 7252(a) (West 1991). On December 28, 1992, appellant, through counsel, filed a motion for summary reversal. On March 25, 1993, the Secretary of Veterans Affairs (Secretary) filed a motion for summary affirmance, for acceptance of the motion in lieu of a brief, and for a stay of proceedings pending a ruling on this motion. On July 15, 1993, counsel for appellant filed a response in opposition to the Secretary's motion for summary affirmance, and requested that the Court accept this response and the December 28, 1992, motion for summary reversal in lieu of a brief. For the reasons set forth below, the Court will vacate the January 17, 1992, Board decision and remand the matter for readjudication.

## I. Factual Background

The veteran, Eugene Camphor, served honorably in the United States Army from December 6, 1942, until February 14, 1946. R. at 14, 23. Appellant and veteran were married on March 8, 1947 (R. at 17), had three daughters, and separated in 1950. R. at 34, 40, 44, 47. After the separation, appellant had four children who were born in 1954, 1957, 1959, and 1967. R. at 60.

The veteran died as a result of an accidental drowning in Florida on July 9, 1967. R. at 19. His death certificate indicated that he was married, and recorded his address as 433 North 19th Street, Fort Pierce, Florida. *Id.* A woman named Jessie Mae Camphor signed the death certificate as the informant, and recorded her address as being the same as the veteran's. *Id.* The record reflects that appellant was the veteran's legal wife at the time of his death and that she handled the veteran's funeral arrangements. R. at 23–24, 27, 30.

In October 1967, appellant filed an application for Dependency and Indemnity Compensation (DIC) or Death Pension by a Widow or Child. R. at 33–36. The VA responded to appellant's application on October 27, 1967. R. at 38. The VA informed appellant that she was ineligible for DIC because the veteran's death had not resulted from a service-connected disease or injury, and requested that she submit information regarding the circumstances surrounding her separation from the veteran, as well as affidavits from two or more persons who had knowledge of the separation. R. at 38–39. Appellant filed a response in which she stated that the veteran left her in 1950 and that they had never divorced. R. at 40. Appellant began receiving death pension benefits on July 1, 1967. *See* R. at 63.

In a March 6, 1968, letter, the Regional Office (RO) asked appellant to complete a statement of income and net worth (R. at 54–55), and in January 1970 requested that appellant furnish the RO with the names and birth dates of the four children under the age of 18 whom she listed on her statement of income and net worth, and that she explain why she did not report receipt of Social Security Administration benefits for these children. R. at 58; *see* R. at 67–70. Appellant filed a response in which she listed the names of the four children, and stated that the Social Security Administration informed her that she was not entitled to benefits for these children as they were not listed under the veteran's Social Security account number. R. at 60. In a February 16, 1970, administrative deci-

sion, the VA discontinued appellant's death pension benefits after determining that the children she had listed were born subsequent to her separation from the veteran and were illegitimate. R. at 63–64. The VA informed appellant of this decision in a letter which stated in part:

.... To be eligible for benefits, a widow who was separated from her husband must establish that she was without fault in causing or continuing the separation.

We find it necessary to discontinue your award since the evidence submitted does not establish that you were without fault in the separation as evidenced by the birth of the four children after your separation from the veteran.

R. at 65.

In a May 1970 letter, appellant inquired as to why her VA benefits had been discontinued as she had not lived with any man other than the veteran and had not remarried. R. at 76. The VA responded to appellant's inquiry by providing her with a copy of the February 1970 letter which notified her that her benefits had been discontinued. R. at 77–78. In June 1970, appellant filed a statement in support of claim in which she expressed her desire to appeal the decision which discontinued her benefits, and reiterated that the veteran had abandoned her, that they had not been divorced, and that she had neither lived with another man nor remarried since she and the veteran had separated. R. at 79; *see also* R. at 81–82. The VA construed appellant's correspondence as a Notice of Disagreement, and issued a Statement of the Case. R. at 84–86. Appellant perfected her appeal to the Board on July 6, 1970. R. at 87. In a November 30, 1970, decision, the Board concluded that appellant was not entitled to benefits as the widow of the veteran on the ground that she was not free from fault in the separation from the veteran because "[s]ubsequent to their separation, the appellant gave birth to four children who were not the veteran's." R. at 91.

In January 1992, the Board found that appellant had not submitted new and mate-

rial evidence to warrant the reopening of her previously denied claim of entitlement to VA benefits as the surviving spouse of the veteran. *Willie P. Camphor*, BVA 92–___, at 3 (Jan. 17, 1992). Prior to this finding, the Board acknowledged that while the RO had denied appellant's claim several times since the 1970 BVA decision, "it does not appear that the appellant was notified of her appellate rights when informed of the denial of her claims." *Id.* at 2.

## II. Analysis

■ With respect to the numerous RO denials of appellant's claim subsequent to the 1970 Board decision, and prior to the 1992 Board decision which forms the basis of this appeal, the Court agrees with the Board that the RO failed to apprise appellant of her appellate rights. The VA's regulatory provision in 38 C.F.R. § 3.103(b)(1) (1992), provides that a claimant is entitled to

> notice of any decision made by [the] VA affecting the payment of benefits or the granting of relief. Such notice shall clearly set forth the decision made, any applicable effective date, their reason(s) for the decision, the right to a hearing on any issue involved in the claim, their right of representation and the right, as well as the necessary procedures and time limits, to initiate an appeal of the decision.

The record reflects that between 1973 and 1990, in response to appellant's repeated attempts to reopen her claim, the RO sent appellant nine letters stating that the Board had denied her claim in 1970, and that she was not entitled to death pension benefits as the widow of the deceased veteran. R. at 94, 101, 105, 114, 117, 125, 126, 135, 139. Of these nine letters, only the two most recent (September and October 1990) indicate that VA form 1–4107 had been enclosed explaining appellant's procedural and appellate rights. In addition, the VA's April 24, 1984, letter included the following statement, "Your latest application *and any subsequent applications you may submit will also be denied.*" (Emphasis added.) R. at 126. We trust that

the prophylactic practice of denying future claims will not be followed.

Statutory entitlement to death benefits as a "surviving spouse" of the veteran is accorded to

> [the] person of the opposite sex who was the spouse of a veteran at the time of the veteran's death, and who lived with the veteran continuously from the date of marriage to the date of the veteran's death (except where there was a separation which was due to the misconduct of, or procured by, the veteran without fault of the spouse) and who has not remarried or ... has not since the death of the veteran, and after September 19, 1962, lived with another person and held himself or herself out openly to the public to be the spouse of such other person.

38 U.S.C.A. § 101(3) (West 1991). In conjunction with this statute, the VA promulgated sections 3.50 and 3.53 of title 38 of the Code of Fed.Reg. (1992). Section 3.50 is identical to 38 U.S.C.A. § 101, while § 3.53 reads as follows:

> (a) *General.* The requirement that there must be continuous cohabitation from the date of marriage to the date of death of the veteran will be considered as having been met when the evidence shows there was no separation due to the fault of the surviving spouse. Temporary separations which ordinarily occur, including those caused for the time being through fault of either party, will not break the continuity of the cohabitation.
> (b) *Findings of fact.* The statement of the surviving spouse as to the reason for the separation will be accepted in the absence of contradictory information....

In *Gregory v. Brown*, 5 Vet.App. 108 (1993), the Court stated that

> Title 38, U.S.C.A. § 101(3) and 38 C.F.R. § 3.50(b)(1) set forth a two-part test to determine whether a spouse will be deemed to have continuously cohabited with the veteran when there has been a separation. The spouse must not only be free of fault at the time of the separation, but it must be found that the separation "was due to the misconduct of, or procured by, the veteran." Given the

plain meaning of the statute and the inconsistency of § 3.53(a) which eliminates the second part of the test, the Court holds the first sentence of § 3.53(a) unlawful, as exceeding the authority of the Secretary. [Citations omitted.]

. . . .

The language of § 101(3) and § 3.50(b)(1) does not indicate that the without-fault requirement is a continuing one. Rather, under this language, fault or the absence of fault is to be determined based on an analysis of conduct at the time of the separation.

*Id.* at 112. Thus, the regulatory predicate for the 1970 BVA decision, i.e., that there is a burden on a surviving spouse to prove that he or she continued to be free from fault during the period of marital separation, no longer exists. This Court has established that

where the law or regulation changes after a claim has been filed or reopened but before the administrative or judicial appeal process has been concluded, the version most favorable to appellant ... will apply unless Congress provided otherwise....

*Karnas v. Derwinski,* 1 Vet.App. 308, 313 (1991).

In its January 1992 decision, the BVA refused to reopen appellant's claim of entitlement to death pension benefits as the widow of a deceased veteran for lack of new and material evidence. When addressing the evidence which appellant had submitted since the 1970 Board decision, the Board in 1992 found that:

... At the most, the additional evidence presented in this case is only cumulative. The evidence previously of record showed that, while the veteran abandoned the appellant and his three children and that the appellant was unaware of the veteran's whereabouts between 1950 and 1967, she engaged in conduct clearly inconsistent with the marital relationship she had with the veteran. As such, she was at fault in the continuation of the separation and requirements for

continuous cohabitation found in 38 C.F.R. § 3.53 ...

*Camphor,* BVA 92-___, at 4–5.

■ Pursuant to 38 U.S.C.A. § 5108 (West 1991), the Secretary must reopen a previously and finally disallowed claim if "new and material evidence" is presented or secured with respect to that claim. *See Thompson v. Derwinski,* 1 Vet.App. 251, 253 (1991). In *Manio v. Derwinski,* 1 Vet. App. 140 (1991), this Court established that the BVA must perform a two-step analysis when the veteran seeks to reopen a claim based upon new evidence.

First, the BVA must determine whether the evidence is "new and material". 38 U.S.C.[A.] § [5108]. Second, if the BVA determines that the claimant has produced new and material evidence, the case is reopened and the BVA must evaluate the merits of the veteran's claim in light of *all* the evidence, both new and old.

*Id.* at 145 (citation omitted). The determination whether evidence submitted to reopen a previously disallowed claim is new and material under 38 U.S.C.A. § 5108 is a question of law which this Court reviews de novo. *Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991). New evidence is that which is not "merely cumulative of other evidence on the record" and material evidence is "relevant [to] and probative of the issue at hand" and presents "a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both old and new, would change the outcome." *Id.* In determining the first part of the *Manio* test, i.e., whether the evidence is "new and material" for purposes of reopening, the credibility of the evidence is to be presumed. *Justus v. Principi,* 3 Vet.App. 510, 512–13 (1992).

■ The evidence which appellant has submitted since the November 30, 1970, BVA decision consists of several personal statements, statements from her friends, a copy of her marriage certificate, and a 1990 Social Security Administration award letter. R. at 95–99, 129–30, 132, 142, 148–49. With the exception of the July 31, 1990, Social Security Administration award letter

and appellant's October 1990 statement, the Court finds the evidence which appellant has submitted since the 1970 Board decision to be cumulative of evidence already of record. *Compare* R. at 17 *with* R. at 142; R. at 40, 44, 53, 76, 79, 81–82, 87 *with* R. at 95–99, 129–30. Because the July 31, 1990, letter from the Social Security Administration shows that appellant is entitled to monthly *widow's* benefits as a result of her marriage to the veteran, this letter is new and material evidence sufficient to reopen her claim. This document, "when viewed in the context of all the evidence, both old and new," presents a reasonable possibility that the outcome may change. *Colvin*, 1 Vet.App. at 174. Appellant's twenty-two year endeavor to have her benefits restored may have stemmed not from her inability to correctly answer the VA's question regarding the paternity of the four children born after 1950, but from a communication problem, i.e., her misunderstanding of the question, as evidenced by her October 1990 statement that:

> ... Eugene Camphor abandoned me, and he would come back home and stay for a few days and he would leave again. *WE* did have four children and I feel I am entitled to widow's benefits.

R. at 136 (duplicated at 137). As appellant had not answered this question at any time in her extensive correspondence with the VA, perhaps because she does not appear to have been asked the question, and the statement is relevant to and probative of the issue at hand, we find that this evidence also meets the "new and material evidence" standard which we articulated in *Colvin, supra.*

A remand is necessary so that the Secretary may readjudicate appellant's claim in light of *Gregory, supra,* and *Karnas, supra.* When, as here, an appellant has submitted a well grounded claim, 38 U.S.C.A. § 5107(a) (West 1991) requires that the Secretary assist the appellant in developing facts pertinent to his or her claim. In this case, fulfillment of that duty may involve assisting appellant in the production of appropriate birth certificates and other relevant documentation. On remand, the Sec-

retary also will have the opportunity to make specific findings on whether the separation "was due to the misconduct of, or procured by, the veteran," and to accept the appellant's statements regarding the circumstances surrounding the separation, absent information to the contrary. *Gregory,* 5 Vet.App. at 112–13; 38 C.F.R. § 3.53(b). In addition, the Secretary will have the occasion to reconcile his statement that in 1991,

> the appellant for the first time asserted, without substantiation, that she and the veteran "had been seeing each other often, shortly before he died [and] were planning on getting back together"

(Mot. at 12), with the statement made by appellant's attorney on her behalf in 1968 "that at the time of his death, she was of the opinion that he and she were going back together." R. at 47. The Secretary will also have the opportunity to provide appellant and her attorney with the "[e]vidence of record" which the VA stated showed that appellant's four children born after 1950 "were fathered by a person other than the veteran." R. at 145. The Court expects that the Secretary's readjudication of appellant's claim will comply with our decision in *Fletcher v. Derwinski,* 1 Vet.App. 394 (1991), which held that a remand is not for the mere purpose of rewriting a decision to comply with the "reasons or bases" requirement of 38 U.S.C.A. § 7104(d), but is "meant to entail a critical examination of the justification for the decision." *Id.* at 397.

### III. Conclusion

Accordingly, appellant's motion for summary reversal and the Secretary's motion for summary affirmance are denied, and the January 17, 1992, decision of the Board of Veterans' Appeals is VACATED and REMANDED for readjudication consistent with this decision.