**Victor G. UTTIERI, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 92–409.

United States Court of Veterans Appeals.

March 8, 1995.

William G. Smith, Los Angeles, CA, for the appellant.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, David W. Engel, Deputy Asst. Gen. Counsel, and Adam K. Llewellyn, Washington, DC, were on the pleadings for the appellee.

Before KRAMER, MANKIN, and IVERS, Judges.

KRAMER, Judge:

The matter before the Court is the appellant's application for an award of reasonable attorney fees and expenses under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. The Court will grant the appellant's application and order the award of attorney fees and expenses consistent with this decision.

## I. BACKGROUND

### A. Underlying Appeal

The appellant filed a timely appeal of a March 5, 1992, decision of the Board of Veterans' Appeals (BVA or Board) which had refused, on the ground that new and material evidence had not been submitted, to reopen the appellant's claim of entitlement to service connection for a psychiatric disorder. In a June 7, 1993, memorandum decision, the Court vacated the BVA decision and remanded the matter for further proceedings. 5 Vet.App. 313. *Uttieri v. Brown*, U.S.Vet. App. No. 92–409 (June 7, 1993). The Court found that: (1) the appellant had submitted new and material evidence; (2) the medical evidence submitted by the appellant must be deemed credible for the purposes of determining new and material evidence, *see Justus v. Principi*, 3 Vet.App. 510, 513 (1992); (3) although the appellant's mother was incapable of providing expert testimony regarding the appellant's condition, she was capable of providing testimony as an eyewitness of bizarre behavior displayed by the appellant while in service and shortly thereafter, *see Espiritu v. Derwinski*, 2 Vet.App. 492, 494–95 (1992); (4) the Board should have obtained a psychiatric examination pursuant to the Secretary's duty to assist, *see* 38 U.S.C. § 5107; (5) the Board should have

obtained the appellant's social security records, *see Murincsak v. Derwinski*, 2 Vet. App. 363, 370–71 (1992); *Masors v. Derwinski*, 2 Vet.App. 181, 187 (1992); and (6) the issue of clear and unmistakable error (CUE) was not before the Board when it issued its decision and was, therefore, not ripe for the Court's consideration; *see Russell v. Principi*, 3 Vet.App. 310 (1992) (en banc).

### B. Application for Attorney Fees

On June 16, 1994, the appellant filed a "MOTION FOR AN AWARD OF REASONABLE ATTORNEY'S FEES UNDER 28 U.S.C. [§] 2412." In his motion, the appellant asserted that he is a prevailing party (Motion (Mot.) at 1); that the Secretary's position was not substantially justified (Mot. at 2); that no special circumstances exist which would make an award unjust (Mot. at 3); and that he meets the net worth requirements and is thus an eligible party (Mot. at 4). The appellant also provided an accounting in which he requested an award of $9,297.54, computed based on 78.5 hours at an hourly rate of $118.44. Mot. at 9–11.

The Secretary filed a response to the appellant's motion on September 23, 1994. The Secretary asserted that he did not contest the appellant's representations concerning his net worth, or the facts that the appellant is a prevailing party and that no special circumstances exist which would make an award unjust. Secretary's Response (Response) at 1–2. However, the Secretary argued that his position in this appeal was substantially justified, thus making an award of attorney fees unwarranted. Response at 9–15. The Secretary also argued that, if the Court were to award attorney fees, the appellant's claim should be reduced because (1) the appellant did not achieve all the results prayed for in his brief, and (2) there should be a fixed rate of $75.00 per hour. Response at 16–20.

## II. ANALYSIS

### A. Predicate Issues

█ Three predicate issues are involved in an application for an award of EAJA fees

and expenses: (1) the party opposing the United States must be a prevailing party; (2) the government's position must not have been substantially justified; and (3) there must be no special circumstances which would make an award against the government unjust. *Penny v. Brown,* 7 Vet.App. 348, 350 (1995). The Secretary does not contest issues (1) and (3). Thus, the only predicate issue in dispute is whether the Secretary's position was substantially justified.

### B. Substantial Justification

In *Stillwell v. Brown,* 6 Vet.App. 291, 302 (1994), *appeal dismissed for lack of jurisdiction,* 46 F.3d 1111 (1995), the Court established the following standard for determining whether the Secretary's position was substantially justified:

> [T]he VA must demonstrate the reasonableness, in law and fact, of the position of the VA in a matter before the Court, and of the action or failure to act by the VA in a matter before the VA, based upon the totality of the circumstances, including merits, conduct, reasons given, and consistency with judicial precedent and VA policy with respect to such position, and action or failure to act, as reflected in the record on appeal and the filings of the parties before the Court. [Citations omitted.]

*See Felton v. Brown,* 7 Vet.App. 276, 280 (1994) (in determining whether VA's position was substantially justified, the Court looks to the VA's position both at the administrative level and before the Court).

In this case, the Secretary argues that his position was substantially justified because, "[t]o the extent that the Court correctly applied *Justus and Espiritu, supra,* to the facts at bar," both of those decisions "postdated the BVA decision in question," and that, without the benefit of these decisions, the BVA's conclusion that the appellant had not submitted new and material evidence was reasonable. Response at 13–14. While both *Espiritu* and *Justus* postdated the BVA decision in question, the Court concludes that this fact does not render the Secretary's position substantially justified.

As to *Espiritu,* the Court's decision in that case benefitted the Secretary in that it limited the value of lay evidence, rendering incompetent any medical opinion offered by a lay person. The other aspect of *Espiritu,* i.e., that laypersons may offer eyewitness testimony as to a veteran's symptoms, was already in existence at the time of the BVA decision. *See e.g., Caldwell v. Derwinski,* 1 Vet.App. 466 (1991). Therefore, without the benefit of *Espiritu,* the BVA should have given more value to the lay evidence submitted, perhaps even concluding that it was new and material.

As to *Justus,* even assuming that the BVA's determination that new and material evidence was not submitted was reasonable without the benefit of that decision, the Court's inquiry as to reasonableness does not end with the BVA decision.

The Secretary has an ethical obligation to inform this Court of the facts and the law applicable in each appeal before this forum. *See Penny,* 7 Vet.App. at 351; *see also* MODEL RULES OF PROFESSIONAL CONDUCT FOR FEDERAL LAWYERS Rule 3.3 (1990); ABA MODEL RULES OF PROFESSIONAL CONDUCT Rule 3.3 (1994). Furthermore, when pertinent authorities come to the attention of a party after the party's brief has been filed, but before the Court has rendered its decision, the party must advise the Clerk by letter, with a copy to all other parties, setting forth the citations to such authorities. U.S.Vet.App.R. 28(h).

In *Penny, supra,* the BVA, relying on medical texts, had denied entitlement to a compensable rating for hepatitis in September 1992. In May 1993, the Court issued its decision in *Thurber v. Brown,* 5 Vet.App. 119 (1993), which held that the Board must provide a veteran with reasonable notice of its proposed reliance upon a medical text, and also must provide the veteran with a reasonable opportunity to respond to such text. In July 1993, the Secretary filed his brief in *Penny* without any reference to *Thurber.* In February 1994, the Court vacated the BVA decision, and remanded the matter for compliance with *Thurber. Penny v. Brown,* 7 Vet.App. 348 (1995). In a later decision on the veteran's application for attorney fees,

the Court in *Penny* noted that the Secretary never wavered from his position that the BVA decision should be affirmed despite that fact that, in the nine month period between the *Thurber* decision and the date of the Court's decision on the merits in February 1994, the Court had issued five factually analogous decisions which remanded for application of the *Thurber* doctrine. *See Penny*, 7 Vet.App. at 351–52 (citing five decisions which Court had remanded for application of *Thurber* doctrine). The Court further noted that during that period, the Secretary never advised the Court of *Thurber* or of subsequent Court decisions which applied the *Thurber* doctrine. *Id.* The Court held:

> The Secretary did not take ... corrective action in this case despite the ... need for change in his litigation position. Rather, this appellant had to wait nine months for judicial intervention to receive the due process to which he was entitled. Given the totality of the circumstances, this Court finds that the Secretary's unwavering position before this Court that the BVA decision should be affirmed lacked substantial justification. Therefore, the appellant's application for attorney fees will be granted. *See Commissioner, INS v. Jean*, 496 U.S. 154, 160 [110 S.Ct. 2316, 2320, 110 L.Ed.2d 134] (1990) ("The single finding that the Government's position lacks substantial justification, like the determination that a claimant is a 'prevailing party,' thus operates as a one-time threshold for fee eligibility.").

*Penny*, 7 Vet.App. at 351–52.

In this case, the Secretary did not waver from his initial position that the BVA decision should be affirmed. When the Secretary filed his motion for summary affirmance in March 1993, *Justus* had already been issued by the Court (in December 1992), yet the Secretary ignored the summary affirmance criteria in his motion, *see Frankel v. Derwinski*, 1 Vet.App. 23, 25–26 (1990), did not mention the *Justus* decision in his motion, and did not later submit a citation of supplemental authority prior to the Court's decision on the merits in June 1993. The Secretary's unwavering position was unreasonable in that *Justus* clearly established a presumption of credibility that had not been applied by the Board in its decision.

Adding to the unreasonableness was the Secretary's failure to acknowledge the issuance of three decisions dated between the December 1992 *Justus* decision and the Court's June 1993 decision on the merits in this case which specifically applied the *Justus* presumption of credibility to refute the BVA's conclusion that new and material evidence had not been submitted. *See Hadsell v. Brown*, 4 Vet.App. 208, 209 (1993) ("We also note that the Board suggested that the reported history may not have been believed. However, a credibility determination is made properly only after reopening."); *Chipego v. Brown*, 4 Vet.App. 102 (1993) ("[W]ith regard to the doctor's statement and appellant's sworn testimony, if this evidence is believed, it presents a reasonable possibility of changing the outcome of the claim."); *Cuevas v. Principi*, 3 Vet.App. 542 (1992) ("Here, the veteran's testimony provides information not previously before the BVA, which is relevant to and probative of the issue at hand, and, if believed, presents a reasonable possibility of changing the outcome of the claim."). As the Secretary chose not to take corrective action in this case despite the need for a change in his litigation position, the Court finds that, given the totality of the circumstances, the Secretary's position before this Court that the BVA decision should be affirmed, including his misguided effort in moving for summary affirmance, lacked substantial justification. *See Jean*, 496 U.S. at 160, 110 S.Ct. at 2319–20; *Penny*, 7 Vet.App. at 351–52. Therefore, the appellant's motion for attorney fees will be granted. *See Jean, supra.*

### C. Amount of Award

Once a claimant has met the predicate requirements for an award of EAJA fees, the Court is still faced with the question of a what constitutes a "reasonable" fee. *See Jean*, 496 U.S. at 160–61, 110 S.Ct. at 2319–20. As the Supreme Court stated in *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation

multiplied by a reasonable hourly rate." *See Jean,* 496 U.S. at 161, 110 S.Ct. at 2320 ("once a private litigant has met the conditions for eligibility for EAJA fees, the ... court's task of determining what fee is reasonable is essentially the same as that described in *Hensley*"); *Elcyzyn v. Brown,* 7 Vet.App. 170, 176 (1994) (*Hensley* test used in EAJA case at this Court).

### 1. *Hours Reasonably Expended*

The relative success of the party asserting a claim for EAJA fees is a factor in determining the number of hours reasonably expended.

> The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the ... court to adjust the fee upward or downward, including the important factor of the "results obtained". This factor is particularly crucial where a plaintiff is deemed prevailing even though he succeeded in only some of his claims for relief. In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

*Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940; *see Elcyzyn,* 7 Vet.App. at 177.

■ The Secretary contends that the hours listed by the appellant in his accounting should be reduced because, of the nine issues raised by the appellant in his brief, only one was addressed by the Court in its June 1993 decision. Response at 19–20. Of the nine issues, the Court rendered its decision in favor of the appellant based upon two such issues (new and material evidence and duty to obtain social security records), explicitly rejected one issue (CUE), implicitly rejected one other issue as not being reasonably sustainable based on the record and pleadings then before the Court (reversal of BVA decision as clearly erroneous), and predicated on these results, did not reach the other five issues. Therefore, the Court will reduce the number of hours expended based upon the amount of time expended on the issues of CUE and reversal of the BVA decision as clearly erroneous. *See Hensley,* 461 U.S. at 434–35, 103 S.Ct. at 1940 (in determining amount of fee award, "the ... court should focus on the significance of the overall relief obtained by the claimant in relation to the hours reasonably expended on the litigation); *Elcyzyn,* 7 Vet.App. at 177 ("in some instances a court may find it necessary to order an appellant to file an amended [EAJA] application which allocates only that time expended on issues where the position of the United States was not substantially justified).

### 2. *Reasonable Hourly Rate*

■ In *Elcyzyn,* 7 Vet.App. at 179, the Court held that "the increase in the cost of living since enactment of the EAJA in 1981 may justify a fee higher than the statutorily-capped $75." In addition, the Court determined that "the appropriate cost of living index is the United States Department of Labor's Consumer Price Index for All Urban Consumers [ (CPI) ] published by the Bureau of Labor Statistics," *Elcyzyn* at 179, and that it would be desirable to use "a single midpoint date, such as the date upon which an appellant's principal brief, motion, or petition [on the merits] is filed with the Court, as the base for calculating a cost of living increase," *id.* at 181.

In his motion, the appellant states that he determined that the rate in this matter should be $118.44 per hour based upon "the [CPI] (National) for the month of May, 1994," the month preceding the filing of his EAJA application. Mot. at 8. First, the Court is unable to determine what CPI was used by the appellant. Second, the date used as the base for calculating cost-of-living increase should be a single mid-point date. *See Elcyzyn,* 7 Vet.App. at 181.

### III. CONCLUSION AND ORDER

For the reasons stated above, the appellant's "MOTION FOR AN AWARD OF REASONABLE ATTORNEY'S FEES UNDER 28 U.S.C. [§] 2412" is GRANTED in an amount to be determined in accordance with this decision.

The appellant shall, within 30 days of the date of this decision, file a revised accounting indicating the time spent on all issues other than CUE and reversal of the BVA decision as clearly erroneous, and predicated upon an hourly rate based on an appropriate base date and CPI.

Once the appellant files and serves a revised accounting, the Secretary shall have 20 days to file objections, not inconsistent with this decision, to that accounting; if objections are not filed within 20 days, or if the Secretary indicates that he will interpose no objections, the Clerk of the Court is directed to enter an order awarding the appellant's claimed attorney fees and expenses. If the Secretary files objections, a conference pursuant to Rule 33 of this Court's Rules of Practice and Procedure would be available to assist the parties in resolving any differences.

It is so ORDERED.