Willie P. CAMPHOR, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 92–631.

United States Court of Veterans Appeals.

Oct. 23, 1995.

Oliver W. Nelson, Rockford, IL, was on the pleadings for appellant.

Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel; and Karen P. Galla, Washington, DC, were on the pleadings for appellee.

Before KRAMER, FARLEY, and MANKIN, Judges.

FARLEY, Judge:

This case is before the Court on the appellant's application for an award of reasonable attorney fees and expenses under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. The Court will grant the appellant's application and order the award of attorney fees and expenses in the amount of $6,912.23.

## I.

This matter arises from the appeal of the denial of the appellant's claim for death pension benefits. A "surviving spouse" is defined, for death benefits purposes, as the

person of the opposite sex who was the spouse of a veteran at the time of the veteran's death, and who lived with the veteran continuously from the date of marriage to the date of the veteran's death (except where there was a separation which was due to the misconduct of, or procured by, the veteran without fault of the spouse) and who has not remarried....

38 U.S.C. § 101(3); *see also* 38 C.F.R. § 3.50 (1994).

We begin with a brief summation of the facts leading up to the filing of the application for fees. The appellant and the veteran, Eugene Camphor, were married in March 1947, had three daughters, and then separated in 1950. From 1954 to 1967, the appellant had four other children; the record does not show who fathered each of these children. The veteran died in July 1967, and the appellant filed a claim for VA benefits in October 1967. When VA inquired into the circumstances of the appellant's separation from the veteran, she responded that the couple had never divorced. The VA regional office (RO) awarded her death pension benefits with an effective date of July 1967.

In February 1970, the RO discontinued the appellant's "death pension benefits after determining that the children she had listed [on a response to a VA request for information] were born subsequent to her separation from the veteran and were illegitimate." *Camphor v. Brown*, 5 Vet.App. 514, 516 (1993). The RO informed the appellant that a widow "must establish that she was without fault in causing *or continuing* the separation." *Ibid.* (emphasis added). In November 1970, the Board of Veterans' Appeals (BVA or Board) held that the appellant was not entitled to benefits, finding that "she was not free from fault in the separation from the veteran because '[s]ubsequent to their separation, the appellant gave birth to four children who were not the veteran's.'" *Ibid.* In January 1992, the BVA held that the appellant had not submitted new and material evidence and declined to reopen the claim.

The appellant filed a timely appeal to this Court, and then submitted a motion for summary reversal on September 14, 1992. That motion was denied without prejudice by the Court because the record on appeal had not yet been filed. The record on appeal was filed in November 1992, and the appellant filed another motion for summary reversal on December 28, 1992. On March 25, 1993, the Secretary filed a motion for summary affirmance. The appellant filed a response in opposition to the Secretary's motion for summary affirmance on July 15, 1993, and re-quested that the Court accept her two filings in lieu of a brief.

Subsequent to these filings, on May 13, 1993, the Court issued its decision in *Gregory v. Brown*, 5 Vet.App. 108 (1993). The Court stated, "The language of [38 U.S.C.] § 101(3) and [38 C.F.R.] § 3.50(b)(1) does not indicate that the without-fault requirement is a continuing one. Rather, under this language, fault or the absence of fault is to be determined based on an analysis of conduct at the time of the separation." *Id.* at 112. On August 30, 1993, the Court found that a Social Security award letter showing that the appellant was entitled to monthly widow's benefits and a statement by the appellant that the veteran did from time to time return to live with her for a while and that she had four children with him constituted new and material evidence. *Camphor*, 5 Vet.App. at 518–19. The Court vacated the BVA decision and remanded the matter for adjudication in light of *Gregory*. *Id.* at 519. On June 21, 1994, the appellant filed a timely application for attorney fees and expenses under the EAJA.

## II.

The EAJA provides: "Except as otherwise specifically provided by statute, a court shall award to a prevailing party ... fees and other expenses ... incurred by that party ... unless the court finds that the position of the United States was substantially justified...." 28 U.S.C. § 2412(d)(1)(A). In determining whether the Secretary was substantially justified, the Court examines both how VA handled the appellant's claim during the administrative process, i.e., its administrative position, and VA's advocacy before this Court, i.e., its litigation position. 28 U.S.C. § 2412(d)(2)(D) ("'[P]osition of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based."); *Stillwell v. Brown*, 6 Vet.App. 291, 301–02 (1994). The "test" for whether VA was substantially justified was described in *Stillwell* as follows:

[T]he VA must demonstrate the reasonableness, in law and fact, of the position of

the VA in a matter before the Court, and of the action or failure to act by the VA in a matter before the VA, based upon the totality of the circumstances, including merits, conduct, reasons given, and consistency with judicial precedent and VA policy with respect to such position, and action or failure to act, as reflected in the record on appeal and the filings of the parties before the Court.

6 Vet.App. at 302. The Court also adopted the following guidelines established by the Court of Appeals for the Federal Circuit in *Essex Electro Engineers, Inc. v. United States,* 757 F.2d 247, 253 (Fed.Cir.1985):

(1) [R]easonableness is determined by the totality of circumstances, and not by any single-factor approach; (2) reasonableness "turns on what support in law and fact the government offered in defending its case, and ... the merits of the agency decision constitute only one factor in evaluating the justification for the government's litigating position in court," *Essex,* 757 F.2d at 253 (citation omitted); (3) whether the government "drag[ged] its feet," or "cooperated in speedily resolving the litigation," *id.;* and (4) whether the government "departed from established policy in such a way as to single out a particular private party," *id.* at 254 (citation omitted).

*Stillwell,* 6 Vet.App. at 302.

### A. Administrative Position

■ The Secretary argues that the BVA was substantially justified in deciding the appellant's claim. *Gregory* had not yet been decided and the BVA was just applying then-longstanding VA policy to deny death pensions to surviving spouses when there was evidence that the spouse had children with someone other than the veteran subsequent to separating from the veteran, even if the veteran caused the separation. Secretary's Response at 8–10.

The facts in *Stillwell* were almost identical to the situation here: prior to the issuance of *Gregory,* the BVA had denied a surviving spouse's claim for death pension benefits because " 'the evidence as a whole shows that there was never any intent on the part of ... appellant to again cohabit with the veteran.' "

6 Vet.App. at 293 (quoting *In the Appeal of Geraldine L. Stillwell in the Case of Franklin A. Stillwell,* BVA 91–34157, at 3 (Oct. 17, 1991)). The Court noted a pertinent regulation which provides that continuity of cohabitation will not be considered to have been broken where "the evidence establishes that the separation was by mutual consent and that the parties lived apart for purposes of convenience, health, business, or *any other reason which did not show an intent on the part of the surviving spouse to desert the veteran.*" 38 C.F.R. § 3.53(b) (1994) (emphasis added). Because "VA may have reasonably, although incorrectly, inferred from the use of the word 'desert' in § 3.53(b), a need for continuing faultless conduct after separation in cases not involving separation by mutual consent," and "[c]ognizant of the fact that the statutory and regulatory framework presents a 'confusing tapestry,' ... in which the meaning is not easily discerned," the Court found that the BVA's misinterpretation was a reasonable mistake and denied attorney fees. 6 Vet.App. at 303 (quoting *Hatlestad v. Derwinski,* 1 Vet.App. 164, 167 (1991)) (other citations omitted). We can find no discernable difference between this case and *Stillwell* regarding the actions of the BVA, and accordingly, we hold that VA's administrative position was substantially justified.

### B. Litigation Position

This case is discernibly different from *Stillwell,* however, regarding the litigation position. In *Stillwell,* the parties filed a joint motion to remand on June 30, 1993, a month and a half after *Gregory* was issued. 6 Vet. App. at 293. Here, no joint motion was filed, and it does not appear that any negotiations regarding such a motion were ever initiated. In *Penny v. Brown,* 7 Vet.App. 348, 351 (1995), the Court was presented with the situation where a change in law, brought about by the issuance of *Thurber v. Brown,* 5 Vet.App. 119 (1993), occurred 60 days before the Secretary had filed his brief. The Court first recognized that the change in law occurred prior to the filing of the Secretary's brief, and then stated:

Adding to the unreasonableness of the Secretary's position in this appeal is the fact that during th[e] nine-month period [from when the change in law occurred until the Court decided the *Penny* case,] the Secretary also failed to take any corrective action in regard to the appellant's case. In other cases, it is a matter of record that the Secretary has worked with the appellant and entered into a joint motion to remand the appeal for further action by VA as a result of *Thurber*. *See, e.g., Olney [v. Brown],* 7 Vet.App. [160, 161 (1994)] ("On July 23, 1993, the parties filed a joint motion for remand to require the BVA to comply with *Thurber.*"). The Secretary did not take such corrective action in this case despite the same need for a change in his litigation position.... Given the totality of the circumstances, this Court finds that the Secretary's unwavering position before this Court that the BVA decision should be affirmed lacked substantial justification. Therefore the appellant's application for attorney fees will be granted. *Penny,* 7 Vet.App. at 351–52; *see also Uttieri v. Brown,* 7 Vet.App. 415, 417–18 (1995) (application for fees granted where the law-changing case, *Justus v. Principi,* 3 Vet.App. 510 (1992), was decided in December 1992, the Secretary filed a motion for summary affirmance in March 1993, and the Court issued a memorandum decision in June 1993, vacating the BVA decision and remanding the matter); Appellant's Reply at 7–8.

■ There was an additional factor making the Secretary's position in both *Penny* and *Uttieri* even more unreasonable than his position here; i.e., in each of those cases, the Secretary was on notice of the change in law even before he filed his initial pleading. Here, while the Secretary did file his major pleading, the motion for summary affirmance, prior to the issuance of *Gregory,* that timing did not relieve him of the duty to "promptly advise the Clerk [of the Court]" of the change in law brought about by that case and its relation to the underlying appeal here, as it was clearly a "pertinent and significant authorit[y]." *See* U.S.Vet.App.R. 28(h); *Penny,* 7 Vet.App. at 351. Three and a half months lapsed after the decision in *Gregory* before the Court issued the decision

in this case and there is nothing to suggest that the Secretary ever would have advised the Clerk of the change in law if it had taken the Court longer to issue a decision. Moreover, in joining in a motion for remand filed in *Stillwell* on June 30, 1993, the Secretary demonstrated his awareness of the impact of *Gregory* in cases involving the factual background common to *Stillwell* and this case two full months before the Court's August 30, 1993, decision here. It shows a disturbing lack of intra-office coordination for the Secretary to be able to respond quickly to a change in law in one case but not to respond at all regarding the same change in law in another case. Considering the "totality of the circumstances," the Court holds that the Secretary's position was unreasonable, and thus not substantially justified, and that an award of fees is called for.

## C. Award of Fees and Expenses

■ In her original application, the appellant sought reimbursement for 66.25 hours at a rate of $116.18 per hour, equalling $7,696.93, and costs and expenses of $149.04, for a total of $7,845.97. However, the Secretary argues that the appellant's award should be reduced for five reasons. First, the Secretary notes in his response to the EAJA application that the appellant's accounting of hours includes 6.75 hours for postremand work before the BVA. As the Court recently held in *Cleary v. Brown,* 8 Vet.App. 305, 309 (1995), where the Court's remand constitutes a final decision leaving the Court with nothing further to do, the appellant is not entitled to fees for subsequent representation in posttremand proceedings. Accordingly, these hours must be subtracted from the final fee award.

■ Second, the Secretary argues that the appellant should not be compensated for filing both motions for summary reversal, since the arguments contained in each were essentially the same. Response at 12. In her reply, the appellant agreed to subtract 4.75 hours, the time spent preparing the first motion for summary reversal. Reply at 9. The Court finds that such a reduction is proper here.

■ Third, quoting from *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983), the Secretary argues that the appellant's fee award should be reduced because she "has achieved only partial or limited success" in that she moved for summary reversal but the Court denied the motion and remanded. Response at 12–13. However, the Secretary is using the language from *Hensley* out of context. There, the Supreme Court was discussing how to handle fee awards in cases involving multiple claims, some of which were successful and others not. *See* 461 U.S. at 426–27, 103 S.Ct. at 1936. Thus, when the Supreme Court used the phrase "partial or limited success," it was referring to those cases where a claimant prevails on some claims in a given lawsuit, but loses on others. That is not this case, and we see no reason why the fee award should be reduced here just because the appellant was unsuccessful in her attempt to get reversal. *Cf. Smith v. Brown*, 8 Vet.App. 327, 331 (1995) ("In arguing for reversal in his briefs and at oral argument, the appellant was attempting to obtain the optimum relief possible, which he had every right to do in a proceeding before this Court.").

■ Fourth, the Secretary contends that the number of hours claimed by the appellant for the preparation of the EAJA application, 6.25 hours, is excessive and should be reduced to at least half that amount. Response at 14. In her reply, the appellant states that the Secretary has not established any basis for showing that 6.25 hours are unreasonable, and requests that fees for an additional 3.75 hours be added to the award for time spent preparing her reply, for a total of 10 hours of time spent working on the EAJA filings. Reply at 9–10. "It is unquestioned that EAJA fees are available for litigation over the EAJA application itself and that an award of fees and expenses for that purpose would generally follow from success in the basic EAJA application." *Cook v. Brown*, 6 Vet.App. 226, 240 (1994); *see also Commissioner, INS v. Jean*, 496 U.S. 154, 166, 110 S.Ct. 2316, 2323, 110 L.Ed.2d 134 (1990); *Curtis v. Brown*, 8 Vet. App. 104 (1995). In *Curtis*, the Court stated that a successful EAJA claimant "is entitled to reasonable attorney fees" for the time spent preparing and defending the fee application. *Curtis, supra*. The appellant's application was 13 pages long, including 6 and a half pages accounting for the hours spent working on the appeal and the application, and her response was 11 pages long. Neither of these submissions contained duplicative or irrelevant material. Therefore, we see no reason why 10 hours is an excessive amount of time to spend preparing and submitting these filings, and decline to reduce the appellant's fee award on this basis.

■ Fifth, and finally, the Secretary argues that the appellant did not apply the appropriate cost of living adjustment to the statutory hourly rate of $75 established in 28 U.S.C. § 2412(d)(2)(A)(ii). Response at 14–15. The appellant calculated the proper adjusted hourly rate by using the change in the cost of living in the Chicago area from November 1981 to June 1994, the month in which she filed her EAJA application. However, in *Elcyzyn v. Brown*, 7 Vet.App. 170, 181 (1994), the Court stated that it would "permit—and encourage—the selection of a single mid-point date, such as the date upon which an appellant's principle brief, motion, or petition is filed with the Court, as the base for calculating a cost of living increase." In her reply brief, the appellant "agree[d] that the correct cost of living index (CPI–U) should be as of December, 1992, as an appropriate 'mid-point date[ ]' under *Elcyzyn* . . . . Reply at 9. Since December 1992 is the month in which the appellant filed her second motion for summary reversal, the Court finds that it is an appropriate mid-point date. Based on this mid-point date, the appellant calculated the appropriate adjusted hourly rate to be $115.61. The Secretary has not filed any supplemental memoranda objecting to this amount, and we find it to be the correct rate.

In her reply brief, the appellant subtracted from her original request of 66.25 hours 6.75 hours for time spent on postremand work and 4.75 hours for time spent on the first motion for summary reversal, and added 3.75 hours for time spent on her reply brief, for a total of 58.5 hours. Reply at 10. Based on

the above analysis, we agree that this is the proper amount of hours, and multiplying this by 115.61 yields a total fee award of $6,763.19. Also, the appellant claimed $149.04 in costs and expenses, and the Secretary does not contest this amount.

### III.

Accordingly, the Court grants the appellant's EAJA application and awards the appellant $6,763.19 for attorney fees and $149.04 for costs and expenses, for a total award of $6,912.23.

It is so ORDERED.