Nelson G. GRIVOIS, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 92–289.

United States Court of Veterans Appeals.

Jan. 5, 1994.

Stephen Shelnutt, Arlington, VA, was on the pleadings for appellant.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Angela Foehl, Washington, DC, were on the pleadings for appellee.

Before NEBEKER, Chief Judge, and KRAMER and FARLEY, Judges.

NEBEKER, Chief Judge:

Appellant, Nelson G. Grivois, appeals an October 29, 1991, decision of the Board of Veterans' Appeals (BVA or Board) denying service connection for seven disorders, only three of which warrant our consideration. Generically, these three claims are for service connection for depression (dysthymic disorder), for hearing loss, and for residuals of a shoulder infection. The Court vacates the BVA decision as to the depression and hearing loss claims because these claims are not well grounded, and remands the shoulder claim for readjudication.

Because the initial pro se statement of issues listed the BVA's denial of all seven claims as cause for reversal, the record on appeal contains material relevant to each. Counsel for appellant then entered an appearance and has addressed in his motion for summary reversal (which we treat as his brief) only the three claims identified above. The Secretary has opposed and countered with a motion for summary affirmance as to the three claims (which we treat as appellee's brief). Included in that pleading is an argument that appellant has withdrawn the presently unraised claims, and that we should declare him estopped from further argument before the Court on those issues. Counsel for appellant has not opposed that effort or sought leave to file a supplemental brief.

The present posture of this matter has evolved from the creation of a publicly funded program to secure pro bono publico representation to pro se veterans and claimants. *See* Pub.L. No. 102–229 (1991); Pub.L. No. 103–124 (1993). The legislation creating this program provides for the screening of most pro se appeals by an entity functioning independently from the Court. The purpose in screening the cases is to identify those best suited for representation so as not to consume the limited pro bono resources available for representation of veterans benefits claimants.

The program operates in the nation's capital and has called upon the organized Bar— in the District of Columbia and other jurisdictions. Its members commendably have reacted in the highest tradition of the profession. The program has planned and offered continuing legal education so bar members— most of whom have no experience in the field of veterans benefits—might become proficient in that specialty. The program also offers mentoring to the volunteer attorneys to ensure that the appeals are presented thoroughly under the statutory and regulatory complex surrounding veterans benefits, and in the best interest of the appellants consistent with the rule of law. The Court expresses its gratitude and, we are sure, that of everyone concerned with veterans benefits, for the response of the Bar and, in this case, to Stephen Shelnutt, Esq. who represents this veteran.

■ As to the Secretary's argument on withdrawal and estoppel, we note that counsel for appellant, consistent with his professional duty to refrain from arguing meritless points, has been more selective than his pro se client. Since appellant's counsel speaks for him, the issues or claims not pressed are deemed abandoned. *See Treat v. Jemison,* 87 U.S. (20 Wall.) 652, 22 L.Ed. 449 (1875); *Bucklinger v. Brown,* 5 Vet.App. 435 (1993). We render no opinion at this time on the effect abandonment of issues can have on issue or claim preclusion.

Appellant had qualifying service in the Armed Forces from October 1965 to October 1967. In 1989, the Regional Office (RO) denied appellant's original claims, filed in 1988, for all seven disorders. R. at 93. On appeal, the BVA in 1990 remanded the case to the RO for an orthopedic examination in connection with one of the claims, that for service connection for the shoulder disorder. The RO again denied that claim in a rating decision, and consolidated it with the other six claims for BVA consideration. Because appellant presses as erroneous the BVA's action on three claims, these claims are before this Court and will be treated separately.

First, as to appellant's dysthymic disorder, although his 1965 entrance examination reported that he had suffered from tension, R. at 3, there is no further mention in the record of any tension or anxiety until 1969, when he was diagnosed with anxiety. R. at 40. In 1988, an outpatient psychiatric diag-

nostic examination resulted in a diagnosis of dysthymic disorder. R. at 85. There is no evidence in the record to show that appellant's dysthymic disorder was incurred or aggravated during service.

Second, appellant contests the denial of his claim for hearing loss, filed in 1988. He associates the 1988 hearing loss with his service in Vietnam. He states that in Vietnam he experienced loss of hearing for three to four days after exposure to noise from nearby howitzer fire at the fire base. R. at 68, 148–49, 159–60. Appellant argues that this event must be assumed to have occurred based on the presumptions provided under 38 U.S.C.A. § 1154 (1991) and 38 C.F.R. § 3.304(d) (1993). Appellant further argues that the VA failed in its duty to assist by not informing him what was needed to support his claim for hearing loss.

In the BVA decision denying service connection for hearing loss, the Board opined that:

> There are no complaints or findings of hearing loss recorded in the service medical records and there is no objective evidence of hearing loss in the post-service medical evidence. As hearing loss has not been documented, service connection is not warranted.

*Nelson G. Grivois,* BVA 91–___, at 7 (Oct. 29, 1991). The BVA, however, did not comment on any causal connection between any hearing condition in service and any present hearing condition.

■ These two claims, for dysthymic disorder and hearing loss, present a threshold question of well groundedness. The Board expressly decided all seven claims were well grounded. It offered no rationale for that holding; but, even if it had, the Court reviews that jurisdictional issue de novo. *See King v. Brown,* 5 Vet.App. 19, 21 (1993).

■ Section 5107(a) of title 38 unequivocally places an initial burden on a claimant to produce evidence that the claim is well grounded or, as we have held, is plausible. *See* 38 U.S.C.A. § 5107(a) (1991); *Grottveit v. Brown,* 5 Vet.App. 91, 92 (1993); *Tirpak v. Derwinski,* 2 Vet.App. 609, 610–11 (1992). This statutory prerequisite reflects a policy

that implausible claims should not consume the limited resources of the VA and force into even greater backlog and delay those claims which—as well grounded—require adjudication. This policy is starkly clear when one reads the specific reiteration of that requirement in § 5107(b) of title 38. 38 U.S.C.A. § 5107(b) (1991). There it is seen that in adopting the benefit of the doubt rule, the claimant is still not relieved of the initial burden of presenting evidence of plausibility: "Nothing in this subsection shall be construed as shifting from the claimant to the Secretary the burden specified in subsection (a) of this section." *Id.* Attentiveness to this threshold issue is, by law, not only for the Board but for the initial adjudicators, for it is their duty to avoid adjudicating implausible claims at the expense of delaying well-grounded ones.

To decide the legal issue of whether appellant's claims are well grounded, it is helpful to examine their origin. The matter began as a claim for "Bilateral Hearing Loss, 1967" filed April 26, 1988. R. at 68–71. In the "Statement in Support of Claim" filed the same day, appellant listed other claimed disabilities. Those now relevant were "Pain in [left] arm secondary to arm infection of [left] arm while serving in [Vietnam] ..." and "nervous problem." R. at 71. The veteran also listed two civilian doctors who had treated him in 1968–1983 for a neck disorder.

Though the record reflects that the VA recognized the "responsibility of claimants to furnish evidence in support of their claims," it nevertheless set about to assist the veteran by seeking evidence in the possession of one of the treating physicians. R. at 72. Those records of treatment, from 1982 to 1986, say nothing about a hearing loss, make no connection of a "nervous condition" to appellant's military service, and reflect nothing to indicate a connection between the left arm infection he states that he experienced in service and his current tendinitis condition. An August 24, 1988, VA rating examination report reflects "[ear] examination is grossly normal to inspection."

The claims then proceeded to a rating decision which did not discuss the hearing loss claim, but denied the "nervous condition"

as not shown by evidence of records. R. at 93. A subsequent Statement of the Case, which acknowledged the existence of the hearing loss claim, reported that the claim was denied "as nothing was shown in the service medical records and [there was] no treatment directly following service." R. at 116.

■ We, thus, have a record which, despite the initial failure of appellant to present evidence of medical causality as to the claimed hearing loss and "nervous condition," reflects indulgence of that failure and a voluntary effort by the Secretary to supply the needed evidence. None was forthcoming. Those claims failed at the § 5107(a) threshold because they were not well grounded. The purported adjudications of them are nullity in contemplation of law. *Grottveit*, 5 Vet.App. at 93. It must be observed, however, that while no duty to assist arises absent a well-grounded claim, if the Secretary, as a matter of policy, volunteers assistance to establish well groundedness, grave questions of due process can arise if there is apparent disparate treatment between claimants in this regard. *See Vitarelli v. Seaton*, 359 U.S. 535, 539, 79 S.Ct. 968, 972, 3 L.Ed.2d 1012 (1959) (procedures gratuitously provided by Secretary must be provided to all others similarly situated).

Appellant's claim of a shoulder disability is another matter. After remand by the BVA in 1990, the RO arranged for an orthopedic examination in connection with this claim. The examiner, Dr. James Butler, noted the history provided by appellant of an infection in this shoulder after an injection of vaccine in 1967, while appellant was serving in Vietnam. R. at 170. Appellant reported that, at the time, he had swelling for six months, "at which time purulent fluid was withdrawn." R. at 170. The examiner concluded that the "present condition of [the] shoulder is more an impingement of tendinitis with a loss of active elevation. He does have some evidence of adhesive capsulitis with a loss of motion. There is no way to disprove that this is not service related." R. at 170.

■ The VA's effort to help appellant develop evidence revealed a shoulder condition as described above. Causality between the adverse reaction to the immunization is, at best, uncertain. Appellant's own conclusion, stated in support of his claim, that his present shoulder disability is "secondary to arm infection" (R. at 71) is not competent evidence as to the issue of medical causation. *See Espiritu v. Derwinski*, 2 Vet.App. 492, 494 (1992). The statement by Dr. Butler contains not just a double negative, but a triple one ("*no* way to *dis*prove that this is *not* service related") (emphasis added). The best that can be said for this statement is that there is a medical assumption that the current shoulder condition is service related and there is "no way to disprove" the assumption.

Given that reading, the Board's holding that "no relationship has been demonstrated between the ... current left shoulder condition and the adverse reaction," *Grivois*, BVA 91–____, at 7, cannot stand. However, that is not the only way to interpret Dr. Butler's unfortunate choice of words. He may have concluded that there was a way to prove— the product of the double negative "[n]o way to disprove"—that the current condition was not service related, although the trebled negative suggests the opposite conclusion, that is, that neither he nor any other examiner could rule out service connection. Under these circumstances, we cannot decide the issue of well groundedness, and, assuming this claim to be well grounded, the opinion of the Board is deficient as to the required reasons or bases for the denial. *Gilbert v. Derwinski*, 1 Vet.App. 49, 56–57 (1990). Moreover, the Board's finding of fact dealing with this claim, *Grivois*, BVA 91–____, at 9, reflects a medical conclusion of the Board that the adverse reaction was acute and transitory and unrelated to the present diagnosed condition. *See Colvin v. Derwinski*, 1 Vet. App. 171, 175 (1991) (Board may not rely upon its own medical judgments, but rather must base them on independent medical evidence in the record.)

Therefore, the Board's decision as to the claim of left shoulder disability is vacated and the matter is remanded for readjudication which may include a remand to the RO for a clearer medical opinion on causation (including seeking clarification from Dr. But-

ler). The Board's adjudication of the hearing loss and nervous condition claims is vacated with directions to vacate the RO decisions on them. *See Grottveit, supra.*