**Thomas W. BREWER, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

No. 95–1280.

United States Court of Veterans Appeals.

Argued Feb. 3, 1998.

Decided May 29, 1998.

Javier M. Guzman, with whom William D. Wallace and Leah Lorber, Washington, DC, were on brief, for appellant.

Edward V. Cassidy, Jr., with whom Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; and Adrienne

Koerber, Deputy Assistant General Counsel, Washington, DC, were on brief, for appellee.

Before FARLEY, STEINBERG, and GREENE, Judges.

STEINBERG, Judge:

The appellant, veteran Thomas Brewer, appeals through counsel a September 27, 1995, decision of the Board of Veterans' Appeals (Board or BVA) dismissing as not well grounded his claims for Department of Veterans Affairs (VA) service connection for back, left-knee, and left-hip disorders. Record (R.) at 4. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). Following oral argument on February 3, 1998, the Court ordered the parties to file supplemental briefs. The appellant filed a supplemental brief on March 5, 1998, and the Secretary filed a response brief on April 7, 1998. For the reasons that follow, the Court will affirm the decision of the Board.

## I. Background

The appellant had qualifying service in the U.S. Army from August 1986 to June 1989. R. at 83. A June 1986 induction medical examination reported no complications with his lower extremities, spine, or other musculoskeletal systems. R. at 11–12. In September 1986, he experienced left-knee pain, reportedly without trauma, and was diagnosed with patella femoral arthralgia. R. at 16. ("Arthralgia" refers to "pain in a joint". DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 140 (28th ed.1994).) Records from the veteran's separation medical examination on May 5, 1989, reported his lower extremities, spine, and other musculoskeletal systems as "normal" (R. at 65) but also indicated, inter alia, that he had stated that he had experienced swollen or painful joints while in service (R. at 67).

On May 25, 1989, after the separation examination but before discharge, the veteran complained of sharp pain in his left hip and knee. R. at 50. Upon examination, an Army physician diagnosed the condition as sciatica. R. at 51. On a follow-up examination that same month, the veteran complained of pain in the left leg, left knee, and left hip. R. at 52. Although the veteran denied experiencing trauma, the examining Army physician stated that he believed that the contusion on the left thigh was related to trauma. R. at 52. The record on appeal (ROA) reveals no further complaints or treatment prior to the veteran's discharge in June 1989. R. at 83.

On June 16, 1992, approximately three years after his discharge from service, the veteran submitted an application for VA service-connected disability compensation or non-service-connected pension for, inter alia, injuries to his back, left knee, and left hip. R. at 71–75. On the application, he reported "none" as to any post-service private or VA medical treatment for those conditions. R. at 74. In a June 1992 statement, he contended that he had injured his back and knee in service and that these conditions now precluded him from holding "any good jobs". R. at 80.

A VA regional office (RO) provided a compensation and pension examination for the veteran on July 22, 1992. R. at 86–90. The examining VA physician reported the veteran's medical history and contentions about in-service injuries. R. at 86–90. As to the musculoskeletal system, the examiner found no diseases, injuries, or significant joint abnormalities. R. at 87–88. Upon completion of the examination, the VA physician ordered, inter alia, a urinalysis, blood count, and electrocardiogram examination (EKG), and also recommended an x-ray examination of the veteran's spine, left knee, and left ankle. R. at 88. The ROA indicates that an EKG was conducted on July 22, 1992 (R. at 90), and that a blood test was conducted on July 27, 1992 (R. at 89). Apparently, however, the recommended x-ray examination was never conducted.

In August 1992, the VARO denied the veteran's claim for service connection for, inter alia, back, left-knee, and left-hip disorders. R. at 92. Noting that the veteran's "VA examination was completely negative for all claimed conditions", the RO found that his claimed in-service injuries were acute and had resolved while he was still in service. R. at 92. He timely appealed the disallowance of these claims to the Board. R. at 100, 111, 113.

In the September 1995 BVA decision here on appeal, the Board dismissed the appeal of these claims as not well grounded, concluding: "There is no medical evidence in the claims file reflecting any current back, left[-]knee, or left[-]hip disorders. There is no medical evidence of any link or connection between current back, left knee, or left hip disorders, if any, and the contusion of the left thigh which the veteran had shortly before his discharge from service". R. at 4, 6–7, 8.

## II. Analysis

This appeal raises two issues: First, whether, under *Karnas v. Derwinski,* 1 Vet. App. 308, 312–13 (1991), the Court may apply the well-grounded-claim analysis set forth in cases decided after the veteran brought his claim; and, second, whether a recommendation by an examining physician that x-ray examinations be conducted requires VA to provide one or to advise the claimant to undergo one even though a well-grounded claim had not been submitted.

### A. *Retroactivity of the Court's Decisions in* Tirpak *and* Grottveit.

Section 5107(a) of title 38, U.S.Code, provides in pertinent part: "[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." In 1990 in *Murphy v. Derwinski,* the Court defined a well-grounded claim as follows: "[A] plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [section 5107(a)]." *Murphy,* 1 Vet.App. 78, 81 (1990). Beginning with *Tirpak* (July 20, 1992) and *Grottveit* (May 5, 1993), subsequent decisions by this Court have enlarged upon the requirements that a claimant must meet in order for a claim to be determined to be well grounded. *See Tirpak v. Derwinski,* 2 Vet.App. 609, 611 (1992) (claim must be accompanied by supportive evidence that "must 'justify a belief by a fair and impartial individual' that the claim is plausible") (quoting section 5107(a)); *Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993) (requiring medical evidence to well ground claim where determinative issue in-

volves medical etiology or medical diagnosis); *Grivois v. Brown,* 6 Vet.App. 136, 140 (1994) (requiring medical evidence to well ground claim where determinative issue involves medical etiology or medical diagnosis); *Heuer v. Brown,* 7 Vet.App. 379, 384 (1995) (citing *Grottveit, supra* ); *Caluza v. Brown,* 7 Vet.App. 498, 504, 506 (1995) (summarizing caselaw), *aff'd. per curiam,* 78 F.3d 604 (Fed. Cir.1996) (table); *see also Epps v. Gober,* 126 F.3d 1464, 1468 (Fed.Cir.1997) (expressly adopting definition of well-grounded claim set forth in *Caluza, supra* ), *pet. for cert. filed,* No. 97–7373 (Jan. 5, 1998).

Under the Court's present caselaw, a well-grounded claim for service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disease or injury. *See Caluza, supra; see also Epps, Heuer,* and *Grottveit,* all *supra.* The second and third *Caluza* elements can also be satisfied under 38 C.F.R. § 3.303(b) (1997) by (a) evidence that a condition was "noted" during service or during an applicable presumption period; (b) evidence showing post-service continuity of symptomatology; and (c) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology. *See* 38 C.F.R. § 3.303(b); *Savage v. Gober,* 10 Vet.App. 488, 495–97 (1997). Alternatively, service connection may be established under § 3.303(b) by evidence of (i) the existence of a chronic disease in service or during an applicable presumption period and (ii) present manifestations of the same chronic disease. *Ibid.* For the purpose of determining whether a claim is well grounded, the credibility of the evidence in support of the claim is presumed. *See Robinette v. Brown,* 8 Vet.App. 69, 75 (1995). The determination of whether a claim is well grounded is subject to de novo review by this Court. *Id.* at 74.

As noted, at the time of the veteran's initial filing in June 1992 of his claim for service connection (R. at 75), the Court's caselaw generally relied on the analysis in

*Murphy* to determine whether a claim was well grounded. While the appellant's appeal to the Board was still pending, however, this Court issued further precedential decisions pertaining to well groundedness in *Tirpak* in 1992 and in *Grottveit* in 1993, and summarized the state of the law in 1995 in *Caluza* and *Heuer*. The appellant contends that the analysis set forth in these subsequent precedential opinions imposes a higher standard than previously employed and that, consequently, under *Karnas, supra,* the Board was obliged to apply the more favorable *Murphy* standard. Appellant's Brief (Br.) at 16.

For purposes of deciding this issue, the Court will assume, without deciding, that a change in the relevant law was brought about by judicial interpretation and that, prior to this assumed change, the appellant's claim would have been well grounded when initially filed in 1992. The Court notes that, because *Grottveit* did not purport to overrule prior caselaw but rather cited *Murphy, supra,* and *Espiritu* and *Rabideau,* both *infra,* and was decided by a panel and not the en banc Court, *see Bethea v. Derwinski,* 2 Vet.App. 252, 254 (1992) (only en banc Court can overrule precedential panel opinion), the *Grottveit* opinion could well be considered to be an evolution of the law as a logical progression. *Compare Murphy, supra* (Nov. 8, 1990) (requiring that claim be "plausible"), *and Rabideau v. Derwinski,* 2 Vet.App. 141, 144 (Feb. 3, 1992) (requiring that claim be accompanied by evidence that establishes that claimant has claimed disability), *with Espiritu v. Derwinski,* 2 Vet.App. 492, 494 (June 19, 1992) (requiring medical evidence to show medical etiology), *and Tirpak, supra* (July 20, 1992) (requiring evidence that would "justify a belief by a fair and impartial individual" that claim is plausible).

The retroactivity of judicial decisions pertaining to civil matters has been the subject of several recent Supreme Court decisions. As an initial matter, the Court notes that a judicial decision may be applied prospectively in one of two ways. *See Harper v. Virginia Dept. of Taxation,* 509 U.S. 86, 114, 113 S.Ct. 2510, 2527, 125 L.Ed.2d 74 (1993) (O'Connor, J., and Rehnquist, C.J., dissenting). First, in what is known as "pure prospectivity", a court may refuse to apply its decision not only to the litigants before the Court but also as to any case where the relevant facts predate the decision. *Ibid.* Second, a court may apply the rule to some cases, including the case being litigated before it, but not all cases where the relevant facts occurred before the court's decision. *Ibid.* This later approach is known as "selective prospectivity". *Ibid.*

In *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971), the Supreme Court in 1971 enunciated several factors to be considered when deciding whether to apply a decision to events that predated the decision: First, a judicial decision generally will not be applied retroactively when it establishes a new principle of law, either by overruling clear precedent or by deciding an issue of first impression. *Id.* at 106, 92 S.Ct. at 355. Second, a court must consider whether retroactive application of the decision will further the purpose and effect of the rule in question. *Id.* at 106–07, 92 S.Ct. at 355–56. Finally, the court must determine whether retroactive application will produce "substantial inequitable results". *Id.* at 107, 92 S.Ct. at 355–56. The appellant urges this Court to adopt the *Chevron* approach and apply it to the present matter. Appellant's Br. at 16–18.

However, subsequent Supreme Court decisions have criticized and modified the above *Chevron* approach. For example, as the Supreme Court noted in 1993 (*see Harper,* 509 U.S. at 96, 113 S.Ct. at 2517), a majority of the Justices in 1991 had agreed in *James B. Beam Distilling Co. v. Georgia,* 501 U.S. 529, 544, 111 S.Ct. 2439, 2448, 115 L.Ed.2d 481 (1991), that a new rule of federal law that is applied to the parties in the case announcing the rule must be applied as well to all cases pending on direct review. *See also Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 214, 115 S.Ct. 1447, 1450–51, 131 L.Ed.2d 328 (1995). Proponents of the *Beam* approach contended that this view of retroactivity superseded the *Chevron* approach. *See Beam,* 501 U.S. at 540, 111 S.Ct. at 2445–46 (opinion of Souter and Stevens, JJ.).

Ultimately, a unified majority opinion pertaining to the retroactivity of judicial decisions in civil matters emerged in 1993 in *Harper, supra*, where the Supreme Court adopted the rule set forth in *Beam*, which it phrased as follows: "a rule of federal law, once announced and applied to the parties to the controversy, must be given full retroactive effect by all courts adjudicating federal law". *Ibid.* In so holding, the Court proclaimed unequivocally: "we now prohibit the erection of selective temporal barriers to the application of federal law in noncriminal cases". *Ibid.* A dissent contended, however, that the Court's holding merely prohibited selective prospectivity and did not foreclose the possibility of pure prospectivity. 509 U.S. at 114, 113 S.Ct. at 2527 (O'Connor, J., and Rehnquist, C.J., dissenting); *see also Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 115 S.Ct. 1745, 131 L.Ed.2d 820 (1995) (stating in dictum that change in law might not be applied retroactively (including to the parties before the Court) in special instances of tax cases and cases involving qualified immunity due to unique reliance considerations).

This Court need not address the full implications of the rule in *Harper* or the contentions raised by the dissent there in order to resolve the instant matter. In the present case, it is clear, contrary to the appellant's contentions, that controlling Supreme Court precedent in *Harper* requires this Court, as well as the Board, to apply the analysis set forth in *Grottveit* and *Tirpak*, as summarized in *Caluza* and *Heuer*, when determining whether a claim is well grounded. *See Harper*, 509 U.S. at 96–97, 113 S.Ct. at 2517–18. In *Grottveit* and *Tirpak*, both *supra*, the Court not only enlarged upon the issue of well groundedness but also applied the analysis to the parties that were before the Court at that time and expressed no limitation as to applying those holdings to other cases begun before those decisions. Hence, under *Harper*, this Court must, as the Secretary contends in his April 7, 1998, response (Appellee's Supplemental Br. at 10), give full retroactive effect to the rule formulated in those opinions. *See Harper, supra*. To do otherwise would be engaging in selective prospectivity, a practice that both the majority and the dissent in *Harper* agreed may not be employed—and one in which this Court in *Grottveit* and *Tirpak* had indicated no intention to engage.

The Court notes that its precedential caselaw is not inconsistent with the Supreme Court's rulings as to the retroactivity of judicial decisions in civil matters. In *Karnas*, the Court held:

[W]here the law or regulation changes after a claim has been filed or reopened but before the administrative or judicial appeal process has been concluded, the version most favorable to the appellant should and we so hold will apply unless Congress provided otherwise.

*Karnas*, 1 Vet.App. at 313. The decision in that case and the cases on which it relies involve a change in *statute or regulation*, as compared to a rule set forth in a judicial decision. *Cf. Stillwell v. Brown*, 6 Vet.App. 291, 300 (1994) ("*Karnas* is not applicable when the change in law as to a particular case or set of cases is mandated by action of the Federal Circuit or the Supreme Court" because doing otherwise would render fundamental notions of judicial review and stare decisis meaningless). The distinction between the two is clear. *See, e.g., Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 311–12, 114 S.Ct. 1510, 1519, 128 L.Ed.2d 274 (1994) (" 'principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student' ") (quoting *United States v. Security Industrial Bank*, 459 U.S. 70, 79, 103 S.Ct. 407, 413, 74 L.Ed.2d 235 (1982)).

The appellant relies on *Camphor v. Brown*, in which this Court purported to be applying the *Karnas* doctrine to a change in law brought about by judicial interpretation of a VA regulation (*see Gregory v. Brown*, 5 Vet. App. 108 (1993) (interpreting 38 C.F.R. § 3.50(b)(1) in manner more favorable to VA claimant seeking to come under that regulation than VA had interpreted the regulation)). *Camphor*, 5 Vet.App. 514, 517–19 (1993). In ruling on the claimant's appeal in *Camphor*, the Court applied the most recent interpretation of the regulation (replacing a previously invalidated regulation), which *also*

was more favorable to the appellant who was claiming status as a surviving spouse. *Ibid.* That is also the situation that prevailed in *Moffitt v. Brown*, 10 Vet.App. 214, 226 (1997), where the Court applied its decision in *Austin v. Brown*, 6 Vet.App. 547, 551 (1994), to a BVA decision issued prior to that opinion and said it was doing so "under *Karnas*". The rule articulated by the Court in *Austin* was also more favorable to the appellant. Thus, although it is true that the Court in *Camphor* and *Moffitt* applied the more favorable law, it did not engage in selective prospectivity by overlooking existing caselaw in order to apply a subsequently modified but more favorable analysis. Rather, the Court simply applied the caselaw as it existed at the time of the decision, and *Camphor* and *Moffitt* thus do not support the appellant's position. Moreover, although in *Hudgins v. Brown* the Court stated that *Camphor* had "indicated that the rule announced in *Karnas* was applicable to changes in law brought about by opinions of this Court", the *Hudgins* Court applied a new Court jurisdictional holding to dismiss the appeal there even though the appeal would not have been dismissed under the law at the time when the appeal was filed. *Hudgins*, 8 Vet.App. 365, 366–67 (1995) (applying *Landicho v. Brown*, 7 Vet. App. 42, 44 (1994), retroactively to cases pending on appeal at time of decision); *cf. Marlow v. Brown*, 5 Vet.App. 146, 150 (1993) (applying regulatory provisions in effect prior to RO decision in order to determine if RO decision was product of clear and unmistakable error). In sum, in *Hudgins*, the Court applied new law that was less favorable to the appellant.

■ Accordingly, the Court concludes that any interpretation of *Karnas* or *Camphor*, such as the appellant is here advocating, that would prohibit the Court from applying retroactively a judicial decision issued during the course of an appeal and made applicable to the parties to that decision simply because its application would be less favorable to the appellant would be inconsistent with controlling Supreme Court precedent and is hereby rejected by this Court. *See Harper*, 509 U.S. at 96, 113 S.Ct. at 2517 ("rule of federal law, once announced and applied to the parties to the controversy, must be given full retroac-

tive effect by all courts adjudicating federal law"); *cf. Smith (Rose) v. West*, 11 Vet.App. 134, 137 (1998) (quoting *Berger v. Brown*, 10 Vet.App. 166, 170 (1997), for proposition that "opinions from this Court that formulate new interpretations of the law subsequent to an RO decision cannot be the basis of a valid [clear and unmistakable error (CUE) ] claim" under 38 C.F.R. § 3.105(a) (now codified at 38 U.S.C. § 5109(a))); *Damrel v. Brown*, 6 Vet.App. 242, 246 (1994) (Court holds that for purposes of adjudicating CUE claim in prior VA decision, "new" Court interpretation of law that was not issued at the time of prior VA decision does not apply).

■ In light of the foregoing, the Court holds that the veteran has not submitted a well-grounded claim under *Caluza, Heuer, Grottveit,* and *Tirpak,* all *supra.* Even assuming that he has submitted medical evidence of a current disease, the only evidence he submitted that supports a finding of nexus to service is his own testimony, and evidence of nexus cannot be provided by lay testimony because "lay persons are not competent to offer medical opinions". *Grottveit, supra; see also Meyer v. Brown*, 9 Vet.App. 425, 429 (1996); *Edenfield v. Brown*, 8 Vet.App. 384, 388 (1995) (en banc); *Espiritu, supra; Grivois, supra.*

■ Furthermore, the Court finds that the veteran, contrary to his contentions, has not provided evidence of continuity of symptomatology under 38 C.F.R. § 3.303(b). *See Savage*, 10 Vet.App. at 498. His statements that his knee "hurts whenever I put weight [on it]" and that his injuries prevent him from holding "any good jobs" (R. at 80) do not support a finding of continuity of symptomatology; as to the former, it describes only his current condition and, as to the latter, it also describes only his current condition and, moreover, is too vague to relate his current symptoms to his prior symptoms or to his period of service or any applicable presumption period. *See Savage, supra.* Nor is there any medical evidence linking the claimed continuous symptoms to a current disability. *Ibid.*

Accordingly, the veteran has not presented competent evidence connecting any current

disability he may have to his period of service, and the Court therefore holds, on de novo review, that his claim for service connection is not well grounded.

### B. Duty to Assist

■ Pursuant to 38 U.S.C. § 5107(a), once a claimant has submitted a well-grounded claim, the Secretary is required to assist that claimant in developing the facts pertinent to the claim. *See* 38 C.F.R. § 3.159 (1997); *Epps*, 126 F.3d at 1469; *Littke v. Derwinski*, 1 Vet.App. 90, 91–92 (1990). Where the record does not adequately reveal the current state of the claimant's disability and the claim is well grounded, the fulfillment of the statutory duty to assist requires a thorough and contemporaneous medical examination. *See Suttmann v. Brown*, 5 Vet. App. 127, 138 (1993); *Green (Victor) v. Derwinski*, 1 Vet.App. 121, 124 (1991). "If a diagnosis is not supported by the findings on the examination report or if the report does not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for evaluation purposes." 38 C.F.R. § 4.2 (1997); *see also* 38 C.F.R. § 19.9 (1997) ("[w]hen ... it is determined that further evidence or clarification of the evidence ... is essential for a proper appellate decision, ... the Board shall remand the case to the agency of original jurisdiction").

■ In the present case, as we held in part II.A, above, the veteran has not submitted a well-grounded claim because the record on appeal does not contain competent medical evidence of nexus or evidence of continuity of symptomatology. Therefore, the statutory duty to assist had not attached, and VA's failure to provide a complete examination (by conducting the recommended x-ray examination) could not have constituted a prejudicial violation of section 5107(a). *See* 38 U.S.C. § 7261(b) ("Court shall take due account of rule of prejudicial error"); *Edenfield*, 8 Vet.App. at 391 (Board's reliance on medical treatise without requisite advance notice to claimant nonprejudicial when claim not well grounded); *see also Epps*, 126 F.3d at 1468; *Littke, supra.*

■ The absence of a well-grounded claim, however, does not absolve the Secretary of all duties. Section 5103(a) of title 38, U.S.Code provides: "If a claimant's application for benefits under the laws administered by the Secretary is incomplete, the Secretary shall notify the claimant of the evidence necessary to complete the application." 38 U.S.C. § 5103(a). This duty to notify arises as to an initial claim when "the Secretary was on notice that relevant evidence may have existed, or could have been obtained, that, if true, would have made the claim 'plausible' and that such evidence had not been submitted with the application." *Robinette*, 8 Vet.App. at 80; *see also McKnight v. Gober*, 131 F.3d 1483, 1484–85 (1997) (adopting this Court's interpretation of § 5103(a) in *Robinette, supra); Meyer*, 9 Vet.App. at 429–30; *cf. Johnson (Ethel) v. Brown*, 8 Vet. App. 423, 427 (1995) (missing evidence would not have made claim plausible). Additionally, pursuant to 38 C.F.R. § 3.103(c)(2) (1997), VA hearing officers have a regulatory duty to "suggest the submission of evidence which the claimant may have overlooked". *See Douglas v. Derwinski*, 2 Vet.App. 103, 110 (1992) (quoting 38 C.F.R. § 3.103(c)(2) (1991)), *reaff'd on this ground, Douglas v. Derwinski*, 2 Vet.App. 435, 440–42 (1992) (en banc). Because there was no such hearing in this case, there could not have been a violation of the § 3.103(c)(2) duty here.

■ The appellant contends that the Secretary violated the section 5103(a) duty to notify by failing to inform him that an x-ray examination was necessary to complete his medical examination, and that his claim must be remanded because such an examination may have produced sufficient medical evidence to well ground his claim. Appellant's Br. at 10. Because the record does not indicate whether or not the veteran was aware of the examining physician's reference in July 1992 to a recommended x-ray examination, the Court will assume, for purposes of deciding whether VA provided adequate notice under section 5103(a), that he was not aware of such a reference. Nonetheless, based on the following analysis, the Court holds that remand of the claim is not required.

**236**

As noted earlier, the appellant's claim was not well grounded because he had not offered medical evidence of nexus or evidence of continuity of symptomatology. Although the recommended x-ray examination was never conducted, VA had a section 5103(a) duty to advise the veteran to undergo such an examination only if the resulting evidence would likely have rendered the claim plausible. *See Robinette, supra; see also Epps v. Brown,* 9 Vet.App. 341, 344 (1996), *aff'd sub nom. Epps v. Gober, supra.* In the present matter, the Court cannot hold that any records that may have resulted from such an x-ray examination would have likely rendered the appellant's claim well grounded because there is no basis for conjecturing what evidence would have been produced by such an examination in July 1992. There is certainly no basis for speculating that such an examination would have produced the missing nexus or continuity-of-symptomatology evidence needed to well ground the claim.

Accordingly, by arguing for a section 5103(a) remand on the facts of this case, the appellant is, in effect, urging the Court to adopt a broader interpretation of the section 5103(a) duty to notify than it has previously recognized. To date, this Court has never held that this duty requires VA to inform a claimant what must be done in order to complete a medical examination voluntarily provided by VA, but only that, when a claimant identifies medical evidence that may complete an application but is not in the possession of VA, VA must advise the claimant to attempt to obtain that evidence. *See Sutton v. Brown,* 9 Vet.App. 553, 570 (1996); *Meyer, supra; Robinette, supra; see also Graves v. Brown,* 8 Vet.App. 522, 524–25 (1996) (finding section 5103(a) duty in case where appellant had failed to present new and material evidence to reopen); *cf. Slater v. Brown,* 9 Vet.App. 240, 244 (1996) (no section 5103(a) duty under particular facts of case); *Butler v. Brown,* 9 Vet.App. 167, 171 (1996); *Johnson, supra.* Given the Federal Circuit's express ratification in *McKnight, supra,* of the Court's section 5103(a) interpretation in *Robinette,* even were the Court inclined to revisit its *Robinette* interpretation on the facts of the instant case, which it is not, the Federal Circuit's *McKnight* opinion would render it

inadvisable for us to do so. Moreover, the appellant's arguments that section 5103(a) somehow could impose a duty on VA to complete the examination, Appellant's Br. at 8–12, confuse the section 5107(a) duty *for VA itself to assist* a claimant, who has, as the veteran here has not, submitted a well-grounded claim, with VA's section 5103(a) duty to notify a claimant who submits an incomplete application of information *that the claimant must submit* under certain circumstances set forth in *Robinette, supra. See Epps,* 9 Vet.App. at 344–45. Consequently, the Court holds that VA had no duty under the Court's caselaw, ratified by the Federal Circuit in *McKnight, supra,* interpreting section 5103(a) to advise the appellant to obtain an x-ray examination, and thus its assumed failure to do so was not error.

### C. Miscellaneous

The appellant raises some additional arguments. He contends that VA's failure to *provide* the recommended x-ray examination raises constitutional concerns. Appellant's Br. at 10–11. He cites the following statement from the Court's opinion in *Grivois:* "[I]f the Secretary, as a matter of policy, volunteers assistance to establish well groundedness, grave questions of due process can arise if there is apparent disparate treatment between claimants in this regard. *See Vitarelli v. Seaton,* 359 U.S. 535, 539, 79 S.Ct. 968, 972, 3 L.Ed.2d 1012 (1959) (procedures gratuitously provided by Secretary must be provided to all others similarly situated)." *Grivois, supra* (dictum). The appellant's reliance on this dictum is misplaced because there is no question of disparate treatment on the facts of this case; the *Grivois* caution quoted above might lend the appellant some support had he been denied an examination because he had not submitted a well-grounded claim and were it to be demonstrated that similarly situated veterans *were* afforded VA examinations, but that is certainly not the situation here. Hence, the appellant offers only mere assertions of constitutional impropriety for which he has not provided any legal support, *see* Appellant's Br. at 10–11, and the Court need not deal further with such a vague argument.

*See Gov't. and Civic Employees Organizing Comm., CIO v. Windsor,* 353 U.S. 364, 366, 77 S.Ct. 838, 839, 1 L.Ed.2d 894 (1957) ("Federal courts will not pass upon constitutional contentions presented in an abstract rather than in a concrete form"); *U.S. v. M. Genzale Plating, Inc.,* 723 F.Supp. 877, 885 (E.D.N.Y.1989) ("[v]ague assertions of unfairness on the part of the government, without more, cannot be molded into constitutional violations"); *Villeza v. Brown,* 9 Vet. App. 353, 357–58 (1996), *appeal dismissed,* 114 F.3d 1206 (Fed.Cir.1997). Furthermore, the appellant contends that, by rendering a decision without having provided the recommended x-ray examination, the Board substituted its own judgment for that of the examining physician. Appellant's Br. at 12. The Court notes, however, that the Board simply relied on the medical opinions in the record before it and that the record does not contain any medical evidence suggesting that any alleged current disability was related to the veteran's period of service. In fact, in examining the veteran's musculoskeletal system in July 1992, the VA examiner found no current diseases, injuries, or significant joint abnormalities. R. at 87–88.

### III.  Conclusion

Upon consideration of the foregoing analysis, the ROA, and the parties' briefs and oral argument, the Court holds that the appellant has not demonstrated that the BVA committed error—in its findings of fact, conclusions of law, procedural processes, or articulation of reasons or bases—that would warrant remand or reversal under 38 U.S.C. §§ 5103(a), 5107(a), 7104(a) and (d)(1), and 7261(b) or 38 C.F.R. § 3.303(b). Therefore, the Court affirms the September 27, 1995, BVA decision as to its disallowance of the appellant's claims. *See Meyer,* 9 Vet.App. at 433; *Edenfield,* 8 Vet.App. at 389.

AFFIRMED.