**Frances D. WEAVER, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

**No. 96–667.**

United States Court of Veterans Appeals.

Feb. 25, 1999.

James W. Stewart was on the brief for the appellant.

John H. Thompson, Acting General Counsel; Ron Garvin, Assistant General Counsel; Carolyn F. Washington, Deputy Assistant General Counsel; and Gregory W. Fortsch were on the pleadings for the appellee.

Before KRAMER, HOLDAWAY, and STEINBERG, Judges.

KRAMER, Judge, filed the opinion of the Court. HOLDAWAY, Judge, filed a dissenting opinion.

KRAMER, Judge:

The appellant, Frances D. Weaver, appeals an April 4, 1996, decision of the Board of Veterans' Appeals (BVA or Board) that determined that there was no clear and unmistakable error (CUE) in August 1983 and November 1983 VA regional office (RO) decisions and consequently denied entitlement to dependency and indemnity compensation (DIC) under 38 U.S.C. § 1318. Record (R.) at 9, 22. The appellant has filed a brief, and the Secretary has filed a motion for summary affirmance in lieu of a brief. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will vacate the decision of the Board and remand the matter.

## I. BACKGROUND

The appellant is the surviving spouse of veteran Tyre Weaver, Jr. (R. at 125), who served in the U.S. Army from January 1942 to May 1945 (R. at 26). While the veteran was on a bombing mission over Germany, his left arm was severely wounded and was subsequently amputated, and his right leg was also severely wounded. R. at 56. The veteran landed in enemy territory and was taken as a prisoner of war for fifteen months. R.

at 26, 56. After his discharge from service, the veteran was awarded service connection for a left arm amputation, a right leg injury, and anxiety, all with an April 1, 1946, effective date. R. at 31. At that time, his service-connected anxiety disorder was rated 10% disabling, and the combined rating for his service-connected disabilities was 90%. R. at 31. The appellant later filed a claim for a total disability rating based on individual unemployability (TDIU), which was denied by the RO in a March 1980 decision. R. at 33. The appellant appealed that determination and, on December 2, 1982, the Board denied the veteran's claim for a TDIU rating. R. at 41–49.

According to a December 22, 1982, medical report from Chester W. Jenkins, M.D., which was received by the RO on December 30, 1982, the veteran had related to the examiner that he had nightmares, sensations of being trapped and hopeless, and vivid recollections of his wartime experiences. R. at 51. The veteran had also stated that he had become unable to function in his job as a tax collector due to weakness and depression. R. at 51. The doctor further noted that the veteran had described "considerable withdrawal from social contact" and that he had claimed that being around people caused him discomfort that prevented him from functioning. R. at 52. Dr. Jenkins' impression was "[p]sychotic [d]epression," and he opined the following: "Mr. Weaver does indeed seem to suffer from an *incapacitating psychiatric illness.* In view of the cronology [sic] of symptoms described by him and confirmed by his wife, there [sic] genesis during his military service seems entirely likely." R. at 52 (emphasis added). In response to that report, the RO, in January 1983, sent a letter to the veteran indicating that the RO was processing his claim for an increased disability rating for his service-connected nervous condition and stating that a period of hospitalization was necessary in order to properly rate that condition. R. at 54.

In April 1983, the RO received correspondence from the veteran's Congressman, stating that the veteran was seeking a TDIU rating. R. at 56. On May 31, 1983, the veteran was admitted to a VA medical center (VAMC) for treatment of a nervous condition and depression. R. at 63. During the period of hospitalization that followed, the veteran notified the RO that he was being treated at the VAMC. R. at 61. According to the discharge summary report, dated July 11, 1983, the veteran had been diagnosed with dysthymic disorder and the examiner had concluded: "In view of [the veteran's] deterioration of mental status ... during the latter part of his tenure as a tax collector[,] worsening of his depression, periods of hostility, anger, poor impulse control, helplessness, chronic insomnia, nightmares, [and] vague paranoid ideations [the] veteran is *unemployable* and disability is moderate to severe." R. at 63, 65 (emphasis added). Taking into consideration Dr. Jenkins' report and the records from the appellant's period of hospitalization, the RO, in August 1983, awarded the veteran a 50% disability rating for his mental condition, classified as dysthymic disorder, and assigned a December 30, 1982, effective date (the date the RO had received Dr. Jenkins' medical report). R. at 67–68. The veteran's combined disability rating remained 90%. R. at 68.

The veteran, in September 1983, submitted a statement in support of claim, again requesting a TDIU rating and stating that, since 1978, the RO had failed to address his claim for TDIU. R. at 72. The veteran also inquired as to why he had not received "para[graph] 29 benefits" for his period of hospitalization in 1983. R. at 72; *see* 38 C.F.R. § 4.29 (1998). The RO then requested and received the clinical records from the veteran's 1983 period of hospitalization. R. at 74–96, 103. Based on those records, the RO, in a November 1983 decision, increased to 70% the veteran's disability rating for dysthymic disorder. R. at 105–06. As a result, the veteran's combined disability rating was increased to 100%, with an August 1, 1983, effective date. R. at 106. The veteran was also awarded a temporary total disability rating for the period of time that he was hospitalized, effective from May 31, 1983, to August 1, 1983. R. at 106. The veteran did not appeal the decision, and it thus became final.

On February 20, 1993, the veteran died as the result of a hepatocellular carcinoma (R. at 125), and the appellant, in March 1993, filed a claim for DIC. R. at 118–21. The RO, in an April 1993 decision, determined that the veteran's cause of death was not service connected and denied her claim for DIC. R. at 127–28. The appellant filed a Notice of Disagreement (NOD) (R. at 139, 141–42); a Statement of the Case (SOC) and a Supplemental SOC were issued (R. at 160, 166); and the appellant submitted a substantive appeal (R. at 170). The appellant argued that the effective date for the veteran's 100% disability rating should have been in January 1983, rather than August 1983. R. at 170. Specifically, the appellant argued that there had been CUE in the November 1983 RO decision with regard to the assignment of an effective date. R. at 186. A subsequent RO decision determined that there had not been CUE in the August 1983 and November 1983 RO decisions. R. at 191. In response, the appellant submitted an NOD (R. at 197), and the RO issued a Supplemental SOC (R. at 202).

In the April 4, 1996, BVA decision here on appeal, the Board noted that the effective date for an award of an increased disability rating, pursuant to 38 U.S.C. § 5110(a) and 38 C.F.R. § 3.400(o)(2), is the earliest date that it is factually ascertainable that an increase in disability occurred, if the claim is received within one year from that date. R. at 20. The Board further noted that the RO, in the November 1983 decision, had determined that the facts supported an increase effective in August 1983 and that the Board is not permitted to reweigh evidence in adjudicating a CUE claim. R. at 20–21. The Board then concluded that the appellant had "failed to state valid claims of [CUE] in prior final rating [decisions]." R. at 9; *see also* R. at 20, 21. Consequently, the Board, after noting that the veteran had not been rated 100% disabled for at least ten years immediately preceding his death, denied entitlement to DIC under 38 U.S.C. § 1318. R. at 9, 21. This appeal followed.

## II. ANALYSIS

When a veteran dies as a result of a non-service-connected condition, the surviv-

ing spouse of the deceased veteran is entitled to DIC if the veteran was entitled to receive compensation for a service-connected disability that "was continuously rated totally disabling for a period of [ten] or more years immediately preceding death." 38 U.S.C. § 1318(a), (b)(1); *Damrel v. Brown,* 6 Vet. App. 242, 245 (1994). Where the veteran would have met the requirements in 38 U.S.C. § 1318 but for CUE in a prior RO or Board decision, DIC will be paid to the surviving spouse. *See* 38 C.F.R. § 3.22(a)(2); *Damrel, supra.* In addition, in *Green (Doris) v. Brown,* 10 Vet.App. 111 (1997), which was issued after the Board decision on appeal, the Court addressed the "entitled to receive" language of section 1318(b) and held as follows:

> [A] CUE claim is not the sole way for a survivor to show the veteran's entitlement as of the time of the veteran's death. Rather, the survivor is given the right to attempt to demonstrate that the veteran hypothetically would have been entitled to receive a different decision on a service-connection-related issue ... based on evidence in the veteran's claims file or VA custody prior to the veteran's death and the law then or subsequently made retroactively applicable.

*Green,* 10 Vet.App. at 118; *see also Carpenter v. West,* 11 Vet.App. 140, 145 (1998). In light of *Green,* and considering the pertinent facts of this case, the Court will remand the matter to the Board in order for the Board to readjudicate the appellant's claim to determine whether the veteran, based upon evidence in his claims file or in VA custody prior to his death, would have been entitled to receive a total disability rating for the ten years immediately preceding his death. In this regard, the Board should specifically consider whether the veteran would have been entitled to receive a TDIU rating based upon the RO's receipt, on December 30, 1982, of the December 22, 1982, letter from Dr. Jenkins. *See* 38 C.F.R. § 3.157 (1982). Although the survivor's right under *Green* to attempt to demonstrate that the veteran was "entitled to receive" compensation during his lifetime is not dependent on the veteran having filed a claim, the Court notes that in the

present case the veteran did file an informal claim for TDIU on December 30, 1982, which the RO acknowledged as such in its January 1983 letter to the veteran. The Court further notes that the informal claim, insofar as it relates to a TDIU rating from the date of the claim until the effective date of the eventual award of a 100% schedular rating, has never been adjudicated. Finally, the Court notes that, contrary to the contentions of the dissenting judge, the Court is not jurisdictionally barred from considering judicial precedent issued subsequent to the Board decision on appeal. Indeed, the Court may be obligated to address such caselaw. *See Brewer v. West*, 11 Vet.App. 228, 231–34 (1998) (suggesting that retroactive application of caselaw is required).

## III.  CONCLUSION

Upon consideration of the foregoing, the April 4, 1996, decision of the Board is VACATED and the matter REMANDED for proceedings consistent with this opinion.

HOLDAWAY, Judge, dissenting:

This is a good result from an equitable point of view. It does illustrate, however, the old adage that "hard cases make bad law." The veteran was severely wounded by antiaircraft flak while flying a combat mission over Germany. He miraculously survived and parachuted into enemy territory where he was held as a prisoner of war for fifteen months. After service, he was awarded a 90% combined disability rating, which he maintained for almost forty years until he was granted a total disability rating on a combined schedular basis. Unfortunately, he passed away only a few months before he had maintained that total disability rating for ten years. Thus, the veteran's disability rating for VA compensation fell just short of meeting the time requirements under 38 U.S.C. § 1318(b). For that reason, the appellant was not eligible for dependency and indemnity compensation for the veteran's non-service-connected death, unless she established that the veteran had been "entitled to receive" a total disability rating for his service-connected conditions for ten years prior to his death. *See* 38 U.S.C. § 1318(b)(1).

For purposes of a surviving spouse's claim under section 1318, the prior disposition of an issue during the veteran's lifetime is binding on VA when determining what level of compensation the veteran was entitled to receive. *See* 38 C.F.R. § 20.1106 (1998). However, like other final VA determinations, the spouse can seek to have a previous determination regarding the veteran's degree of disability reversed or revised on the grounds of clear and unmistakable error. *See* 38 C.F.R. §§ 3.22(a)(2), 3.105(a) (1998). In this matter, the appellant raised one issue. She claims that the BVA's decision was arbitrary and capricious in finding that the November 1983 RO decision was not clearly and unmistakably erroneous. The appellant claims that the RO failed to correctly apply 38 U.S.C. § 5110(b)(2) and that, as a matter of law, the veteran would have been entitled to an earlier effective date. However, the Board found that the RO's decision was not clearly and unmistakably erroneous. The majority does not dispute the fact that the BVA decided that issue correctly. Therefore, this Court should affirm the decision of the Board.

A remand should be based on some type of error committed by the Board. The majority's opinion basically says "try again," without pointing to any error committed by the Board. The reason for the majority's action is that their decision is based on an issue raised sua sponte. The appellant has not addressed a possible claim for total disability based on individual unemployability that may be still pending before VA. If there is one, she is free to pursue it without a remand from this Court. *See Hanson v. Brown*, 9 Vet.App. 29 (1996) (stating that an unadjudicated claim generally remains pending before VA until withdrawn); *Meeks v. Brown*, 5 Vet.App. 284 (1993) (holding that a claim before an RO remains pending until a final decision is rendered). This Court has consistently held that it will not review issues that were not raised before the Court. *See Bucklinger v. Brown*, 5 Vet.App. 435, 436 (1993); *see also* 38 U.S.C. § 7261(a) (stating that the Court's scope of review is limited "to the extent necessary to its decision and when presented"). Furthermore, the Court has no jurisdiction over issues that have not been

decided, at least implicitly, by the Board. *See* 38 U.S.C. § 7252(a) (stating that this Court has the "power to affirm, modify, or reverse a decision of the Board or to remand the matter as appropriate"); *Ledford v. West,* 136 F.3d 776, 779 (Fed.Cir.1998) (explaining that this Court's jurisdiction "is premised on and defined by the Board's decision concerning the matter being appealed"); *Morgan v. Brown,* 9 Vet.App. 161, 162 (1996).