Citation Nr: 1504643 
Decision Date: 01/30/15 Archive Date: 02/09/15

DOCKET NO. 12-35 008 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUES

1. Entitlement to a disability rating in excess of 20 percent for mechanical low back pain.

2. Entitlement to service connection for a cervical spine disability, to include as secondary to service-connected mechanical low back pain.


REPRESENTATION

Veteran represented by: Tennessee Department of Veterans' Affairs


ATTORNEY FOR THE BOARD

M. M. Olson, Associate Counsel



INTRODUCTION

The Veteran served on active duty from July 1977 to August 1978.

These matters come before the Board of Veterans' Appeals (Board) on appeal from a September 2011 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Nashville, Tennessee.


FINDINGS OF FACT

1. Throughout the pendency of the appeal, the Veteran's mechanical low back pain was manifested by chronic pain, tenderness, and forward flexion limited to 60 degrees.

2. The Veteran's mechanical low back pain resulted in mild radiculopathy of the bilateral lower extremities.

3. The probative, competent evidence does not establish that a cervical spine disability is causally or etiologically related to active duty or is causally related to or aggravated by the Veteran's service-connected mechanical low back pain.


CONCLUSIONS OF LAW

1. The criteria for a disability rating of 30 percent for mechanical low back pain have been met. 38 U.S.C.A. §§ 1155, 5103A, 5107 (West 2014); 38 C.F.R. § 4.71a, Diagnostic Code 5242 (2014).

2. The criteria for a disability rating of 10 percent for radiculopathy of the bilateral lower extremities have been met. 38 U.S.C.A. §§ 1155, 5103A, 5107 (West 2014); 38 C.F.R. § 4.124a, Diagnostic Code 8520 (2014).
3. The criteria for service connection for a cervical spine disability have not been met. 38 U.S.C.A. §§ 1131, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.304, 3.307, 3.309, 3.310 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. 
§§ 3.102, 3.156(a), 3.159, 3.326 (2014). A July 2011 letter satisfied the duty to notify provisions with respect to the claim for an increased disability rating and direct service connection, to include notice of the regulations pertinent to the establishment of an effective date and disability rating. See 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b)(1); Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002); see also Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). In addition, a September 2012 Statement of the Case detailed the law regarding secondary service connection, and the Veteran's claims were re-adjudicated in a March 2014 Supplemental Statement of the Case. See Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006) (finding that a notice defect may be cured by issuance of a fully compliant notification followed by a re-adjudication of the claim). 

The record contains the Veteran's service treatment records, VA treatment records and examination reports, private treatment records, and lay evidence. In addition, the Veteran underwent VA examination in August 2011 in connection with his increased rating claim. Pursuant to a December 2013 Board Remand, the Veteran underwent additional VA examination in January 2014 with respect to both his back disability and claimed cervical spine disability. The record demonstrates that the VA examiners reviewed the relevant medical history and the Veteran's lay statements. Additionally, the examinations provided sufficient information to rate the service-connected disability on appeal. 38 C.F.R. § 3.159(c)(4); Barr v Nicholson, 21 Vet. App. 303 (2007). Furthermore, the January 2014 VA examiner provided an opinion with adequate rationale as to the clinical findings, relying on and citing to the records reviewed. Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008) (the probative value of a medical opinion comes from when it is the factually accurate, fully articulated, and sound reasoning for the conclusion, not the mere fact that the claims file was reviewed). Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion has been met. 38 C.F.R. § 3.159(c)(4). Moreover, the Board finds the RO substantially complied with the Board's Remand directives. See 38 U.S.C.A. § 5103A(b); Stegall v. West, 11 Vet. App. 268 (1998); D'Aries v. Peake, 22 Vet. App. 97 (2008). 

There is no indication in the record that any additional evidence relevant to the issues is available and not part of the claims file. See Pelegrini, 18 Vet. App. 112. As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of the case, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 20 Vet. App. 537, 543 (2006); see also Dingess/Hartman, 19 Vet. App. at 486.

All of the evidence in the Veteran's record has been thoroughly reviewed. Although an obligation to provide sufficient reasons and bases in support of an appellate decision exists, there is no need to discuss, in detail, all of the evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (holding that the entire record must be reviewed, but each piece of evidence does not have to be discussed). The analysis in this decision focuses on the most salient and relevant evidence and on what the evidence shows or fails to show with respect to the matters. The Veteran should not assume that pieces of evidence, not explicitly discussed, have been overlooked. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (noting that the law requires only that reasons for rejecting evidence favorable to the claimant be addressed).

Increased Disability Rating

Disability ratings are determined by the application of VA's Schedule for Rating Disabilities (Rating Schedule), which is based on the average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. 
§ 1155; 38 C.F.R. Part 4 (2014). Pertinent regulations do not require that all cases show all findings specified by the Rating Schedule but findings sufficient to identify the disease and the resulting disability, and above all, coordination of the rating with impairment of function will be expected in all cases. 38 C.F.R. § 4.21 (2014); see also Mauerhan v. Principi, 16 Vet. App. 436 (2002).

The primary concern for an increased rating for a service-connected disability is the present level of disability. Although the overall history of the disability is to be considered, the regulations do not give past medical reports precedence over current findings. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Further, a disability rating may require re-evaluation in accordance with changes in a veteran's condition. In all claims for an increased disability rating, VA has a duty to consider the possibility of assigning staged ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007).

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in the parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. It is essential that the examination on which ratings are based adequately portray the anatomical damage and the functional loss with respect to all these elements. The functional loss may be due to absence of part or all of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. §§ 4.40, 4.45 (2014); see also DeLuca v. Brown, 8 Vet. App. 202, 206-07 (1995). Painful, unstable, or malaligned joints, due to healed injury, are entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59 (2014). The factors involved in evaluating and rating disabilities of the joints include weakness; fatigability; incoordination; restricted or excess movement of the joint; or pain on movement. Id.; 38 C.F.R. § 4.45.

The general rating formula for diseases and injuries of the spine (General Rating Formula) provides for the disability ratings under Diagnostic Codes 5235 to 5243, unless the disability is rated under 5243 and considered under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes for diseases and injuries of the spine, with or without symptoms such as pain (whether or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease. 38 C.F.R. § 4.71a. Under the General Rating Formula, a 20 percent rating is assigned for forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees, or the combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees, or muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour, or vertebral body fracture with loss of 50 percent or more of the height. A 30 percent rating is assigned for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees, or the combined range of motion of the thoracolumbar spine not greater than 120 degrees, or muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour, such as scoliosis, reversed lordosis, or abnormal kyphosis. A 40 percent rating is assigned for forward flexion of the thoracolumbar spine 30 degrees or less, or favorable ankylosis of the entire thoracolumbar spine. A 50 percent rating is awarded for unfavorable ankylosis of the entire thoracolumbar spine, and a 100 percent rating is warranted for unfavorable ankylosis of the entire spine.

Note (1) to the General Rating Formula specifies that any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment, should be separately evaluated under an appropriate diagnostic code. Note (2): (See also Plate V.) For VA compensation purposes, normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension is zero to 30 degrees, left and right lateral flexion are zero to 30 degrees, and left and right lateral rotation are zero to 30 degrees. The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. The normal combined range of motion of the thoracolumbar spine is 240 degrees. The normal ranges of motion for each component of spinal motion provided in this Note are the maximum that can be used for calculation of the combined range of motion. Note (3): In exceptional cases, an examiner may state that because of age, body habitus, neurologic disease, or other factors not the result of disease or injury of the spine, the range of motion of the spine in a particular individual should be considered normal for that individual, even though it does not conform to the normal range of motion stated in Note (2). Provided that the examiner supplies an explanation, the examiner's assessment that the range of motion is normal for that individual will be accepted. 

Note (4): Round each range of motion measurement to the nearest five degrees. Note (5): For VA compensation purposes, unfavorable ankylosis is a condition in which the entire cervical spine, the entire thoracolumbar spine, or the entire spine is fixed in flexion or extension, and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; or neurologic symptoms due to nerve root stretching. Fixation of a spinal segment in neutral position (zero degrees) always represents favorable ankylosis. Note (6): Separately evaluate disability of the thoracolumbar and cervical spine segments, except when there is unfavorable ankylosis of both segments, which will be rated as a single disability.

As noted above, intervertebral disc syndrome (preoperatively or postoperatively) may be evaluated either under the General Rating Formula or under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, whichever method results in the higher evaluation when all disabilities are combined under 38 C.F.R. § 4.25. The Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes provides that a 10 percent rating is warranted when there are incapacitating episodes having a total duration of at least one week but less than two weeks during the past 12 months. A 20 percent rating is warranted when there are incapacitating episodes having a total duration of at least two weeks but less than four weeks during the past 12 months, and a 40 percent rating is warranted when there are incapacitating episodes having a total duration of at least four weeks but less than six weeks during the past 12 months. A 60 percent rating is warranted when there are incapacitating episodes having a total duration of at least six weeks during the past 12 months. An incapacitating episode is defined as a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician. 38 C.F.R. § 4.71a, Diagnostic Code 5243, Note (1) (2014).

The Veteran's service-connected mechanical low back pain is rated as 20 percent disabling on and after July 31, 2003. The Veteran filed his claim for an increased disability rating in June 2011. Upon review, the Board finds the criteria for a disability rating of 30 percent have been met throughout the pendency of the appeal. On VA examination in August 2011, the VA examiner reported that there was evidence of guarding, pain with motion, and tenderness on the left and right, which were severe enough to be responsible for an abnormal spinal contour. In January 2014, forward flexion was limited to 60 degrees. Therefore, the Board finds the clinical evidence supports a disability rating of 30 percent for mechanical low back pain. 38 C.F.R. § 4.71a, Diagnostic Code 5242. However, the Board finds that the criteria for a disability rating in excess of 30 percent have not been met at any time during the pendency of the appeal. First, the evidence does not reflect forward flexion of the thoracolumbar spine limited to 30 degrees or less or favorable ankylosis of the entire thoracolumbar spine. 38 C.F.R. § 4.71a, Diagnostic Code 5242. In addition, neither VA examiner found that the Veteran had intervertebral disc syndrome, and therefore a higher evaluation is not warranted under Diagnostic Code 5243. Further, the evidence does not show that the Veteran reported any incapacitating episodes that required bed rest prescribed by a physician. 38 C.F.R. § 4.71a, Diagnostic Code 5243, Note (1) (2014).

In addition, the Board finds a separate disability rating is warranted for the Veteran's symptoms related to radiculopathy. Specifically, the January 2014 VA examiner reported that the Veteran had intermittent, mild pain of the right lower extremity and left lower extremity in connection with his service-connected mechanical low back pain. Physical examination revealed mild involvement of the sciatic nerve on both sides. Therefore, a separate disability rating of 10 percent is warranted for radiculopathy of the bilateral lower extremities under 38 C.F.R. § 4.124a, Diagnostic Code 8520. 

The Board has also considered whether the Veteran's back disability resulted in a level of functional loss greater than that already contemplated by the increased rating. DeLuca, 8 Vet. App. at 206; 38 C.F.R. §§ 4.40, 4.45. In September 2010, the VA examiner found the Veteran's degenerative spurring of L3-S1 caused increased absenteeism at work and difficulty with lifting activities. In August 2011, the Veteran reported that his usual daily activities were limited by pain with prolonged walking and standing and that his pain interfered with his sleep. An additional treatment record shows the Veteran stated that he could not sit or stand for too long, and the pain was worsened by sitting, standing, walking, climbing stairs, getting into or out of a car, and lying on his back. In January 2014, the VA examiner found the Veteran had additional functional loss due to less movement than normal and pain on movement. The Veteran's back condition impacted his ability to work in that he had increased pain with heavy lifting and repetitive bending, but he did not have any restrictions on sedentary work. Here, the Board finds the 30 percent disability rating and 10 percent disability rating granted herein contemplate the level of functional loss experienced by the Veteran as they are based on a complete review of the clinical evidence and the Veteran's lay statements during the pendency of the appeal. DeLuca, 8 Vet. App. at 206; 38 C.F.R. §§ 4.40, 4.45.

With respect to other neurological symptoms, the clinical evidence does not reflect any findings of neurological symptoms associated with the Veteran's mechanical low back pain during the pendency of the appeal. VA treatment records dated in August 2011 and November 2011 show the Veteran denied any bowel and bladder incontinence in relation to his back pain. Likewise, the January 2014 VA examiner did not find any evidence of any neurological abnormalities or findings related to a thoracolumbar spine condition, to include bowel and bladder problems. 38 C.F.R. 
§ 4.71a, General Rating Formula, Note (1).

The Board acknowledges the Veteran is competent to describe his symptoms and their effects on his daily life and occupation. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). Here, in granting the increased disability rating of 30 percent and the separate disability rating of 10 percent, the Board has based the decision on the objective medical evidence, which demonstrates consideration of the Veteran's statements as well as the criteria necessary for rating the disability on appeal. Therefore, resolving the benefit of the doubt in favor of the Veteran, the Board finds the evidence supports a disability rating of 30 percent for service-connected mechanical low back pain throughout the pendency of the appeal. 38 C.F.R. § 4.71a, Diagnostic Code 5242; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). In addition, a separate disability rating of 10 percent for radiculopathy of the bilateral lower extremities is granted. 38 C.F.R. § 4.124a, Diagnostic Code 8520.

Extraschedular Consideration

An exceptional or unusual disability picture occurs where the diagnostic criteria do not reasonably describe or contemplate the severity and symptomatology of a veteran's service-connected disability. Thun v. Peake, 22 Vet. App. 111, 115 (2008). If there is an exceptional or unusual disability picture, the Board must consider whether the disability picture exhibits other factors such as marked interference with employment and frequent periods of hospitalization. Id. at 115-116. When those two elements are met, the appeal must be referred for consideration of the assignment of an extraschedular rating to the Chief Benefits Director or the Director, Compensation and Pension Service. 38 C.F.R. 
§ 3.321(b)(1) (2014). Otherwise, the schedular evaluation is adequate, and referral is not required. Thun, 22 Vet. App. at 116.

Here, the Board finds the Veteran's disability picture is not so unusual or exceptional in nature as to render the disability ratings assigned herein inadequate. The Veteran's mechanical low back pain is evaluated as a musculoskeletal disability, the criteria of which is found by the Board to specifically contemplate the level of occupational and social impairment caused by this disability. Thun, 22 Vet. App. at 115; see also 38 C.F.R. § 4.71a, Diagnostic Code 5242. Likewise, the Veteran's radiculopathy of the bilateral lower extremities is evaluated as a disease of the peripheral nerves, the criteria of which is found to consider the level of occupational and social impairment caused by the disability. Ratings in excess of those assigned are provided for certain manifestations of these disabilities, but as described above, those symptoms were not present during the appeal period. Here, the diagnostic criteria adequately describe the severity and symptomatology of the Veteran's back disability during the appeal period. Therefore, the Veteran's disability picture is contemplated by the Rating Schedule, and no extraschedular referral is required. 

Finally, the Board notes that under Johnson v. McDonald, 2013-7104, 2014 WL 3562218 (Fed. Cir. Aug. 6, 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. However, in this case, after applying the benefit of the doubt under Mittleider v. West, 11 Vet. App. 181 (1998), there are no additional service-connected disabilities that have not been attributed to a specific service-connected condition. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions. 

Total disability rating based on individual unemployability (TDIU)

The United States Court of Appeals for Veterans Claims has held that a TDIU claim is part and parcel of an increased rating claim when raised by the record. Rice v. Shinseki, 22 Vet. App. 447 (2009). As a result, the Board has jurisdiction to consider the Veteran's possible entitlement to a TDIU when the issue is raised by assertion or reasonably indicated by the evidence and is predicated, at least in part, on the severity of the service-connected disability in question, regardless of whether the RO has expressly addressed this additional issue. See VAOPGCPREC 6-96 (Aug. 16, 1996); see also Caffrey v. Brown, 6 Vet. App. 377 (1994); Fanning v. Brown, 4 Vet. App. 225, 229 (1993); EF v. Derwinski, 1 Vet. App. 324 (1991). In this case, although the Veteran has asserted that his service-connected disability affected his occupational abilities during the pendency of the appeal, he does not contend that he is totally unemployable as a result of his disabilities. Accordingly, the Board concludes that a claim for entitlement to a TDIU has not been raised by the record.


Cervical Spine Disability

Service connection may be established for a disability resulting from diseases or injuries which are clearly present in service or for a disease diagnosed after discharge from service, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 U.S.C.A. § 1131; 38 C.F.R. § 3.303. Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). That an injury or disease occurred in service is not enough; there must be chronic disability resulting from that injury or disease. If there is no showing of a resulting chronic condition during service, then a showing of continuity of symptomatology after service is required to support a finding of chronicity. 38 C.F.R. § 3.303(b). The Federal Circuit recently held that continuity of symptomatology under 38 C.F.R. § 3.303(b) applies only to chronic diseases listed in 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331, 1338 (2013). 

Additionally, service connection may be established on a secondary basis for a disability that is shown to be proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310(a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) caused by or (b) aggravated by a service-connected disability. Id.; Allen v. Brown, 7 Vet. App. 439 (1995) (en banc) (additional disability resulting from aggravation of a nonservice-connected disorder by a service-connected disorder is also compensable under 38 C.F.R. 
§ 3.310).

The Veteran asserts that he has a current cervical spine disability related to an in-service motor vehicle accident. Alternatively, he contends that his cervical spine disability is causally related to and/or aggravated by his service-connected mechanical low back pain.

Concerning a current disability, X-ray examination in 2009 revealed slight degenerative disk disease at C4 through C6, and the VA examiner diagnosed cervical strain on VA examination in January 2014. As such, the Board finds the evidence demonstrates a current disability for service connection purposes. 

With respect to an in-service event or injury, service treatment records dated in July 1977 indicate the Veteran was involved in a motor vehicle accident. A September 1977 service treatment record indicates the Veteran intermittently experienced a stiff neck and low back pain. The assessment was rule out musculoskeletal pain secondary to accident. Neurological examination in December 1977 was normal, however, and the record was unclear as to whether the Veteran had a history of head trauma. One service treatment record shows the Veteran reported being hit on the left side of his head with a glass bottle in June 1977. On a January 1978 report of medical history, the Veteran reported a head injury and loss of consciousness secondary to a blow to the head, and a July 1978 report of medical history shows the Veteran reported a history of a head injury. However, a physician noted on the July 1978 report that the Veteran's history was probably invalid. 

With respect to a nexus between the Veteran's current cervical spine disability and any in-service event or injury, there are conflicting medical opinions. In evaluating the probative value of competent medical evidence, the Court has stated that the probative value of medical opinion evidence is based on the medical expert's personal examination of the patient, the physician's knowledge and skill in analyzing the data, and the medical conclusion that the physician reaches. Further, the credibility and weight to be attached to these opinions [are] within the province of the adjudicator. See Guerrieri v. Brown, 4 Vet. App. 467, 470-71 (1993). As such, the Board may appropriately favor the opinion of one competent medical authority over another. See Owens v. Brown, 7 Vet. App. 429, 433 (1995); Wensch v. Principi, 15 Vet. App. 362, 367 (2001). However, the Court has held that the Board may not reject medical opinions based on its own medical judgment. Obert v. Brown, 5 Vet. App. 30 (1993). 

In a March 2009 letter, a private physician, Dr. T. Helton, stated that the Veteran had chronic neck pain from a motor vehicle accident that occurred during service in 1978. Additionally, in April 2011 Dr. Helton reported that the Veteran had sustained a severe head injury while on active duty and had suffered with chronic neck pain since the injury. Dr. Helton opined that the Veteran's disabilities were service-connected. Upon review, the Board finds Dr. Helton's opinions deserve less probative weight than the VA examiner's opinion detailed below. Here, the Board notes that the record does not indicate whether Dr. Helton reviewed the Veteran's records, to include his service treatment records and post-service medical history. In this respect, the Board finds that both the clinical evidence and the Veteran's own lay statements do not firmly support Dr. Helton's findings. First, the service treatment records are not entirely clear as to whether the Veteran suffered a head injury and resulting neck pain during service as there is only one record indicating the Veteran had a stiff neck. Second, the first clinical evidence reflecting reports of neck pain is actually a May 2001 VA examination report. In fact, the Board finds it significant that a March 1998 VA treatment record shows the Veteran denied problems with neck pain and only experienced some stiffness in his neck occasionally. Additionally, an October 2009 VA treatment record shows the Veteran complained of experiencing neck pain for six months, and a November 2009 VA treatment record shows the Veteran reported experiencing neck pain for several years. As such, the clinical evidence does not support the finding that the Veteran experienced chronic neck pain since the in-service accident. 

Furthermore, throughout the record the Veteran was inconsistent with respect to the onset and etiology of his neck symptoms and generally reported that he injured only his low back on active duty. In this respect, an April 2012 VA treatment record shows the Veteran reported occasional neck stiffness unrelated to low back pain, and in January 2014, the Veteran reported having symptoms of neck pain for only the past one to two years. Finally, the Board notes that Dr. Helton only relates "chronic neck pain" to the in-service injury. In this respect, pain alone, without a diagnosed or identifiable underlying malady or condition, does not in and of itself, constitute a disability for which service connection may be granted. Sanchez-Benitez v. West, 13 Vet. App. 285 (1999). As a result, the Board finds the Veteran's medical history and lay statements do not support Dr. Helton's findings and therefore affords the opinions little probative weight. 

Conversely, the Board finds the January 2014 VA examiner's opinion deserves significant probative value. The VA examiner reviewed the Veteran's service treatment records, VA treatment records, and lay statements, citing to the service treatment records and the Veteran's medical history in support of the opinion. Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). The VA examiner opined that the Veteran's claimed condition was less likely than not incurred in or caused by the claimed in-service injury, event, or illness. The VA examiner specifically found that the Veteran did not have any injury to his neck in service that would be anticipated to cause the early onset of arthritis or other future neck problems. In addition, there was no medical evidence of a neck injury in service related to the motor vehicle accident. 

Furthermore, with respect to entitlement to service connection on a secondary basis, the VA examiner found the Veteran's claimed condition was not at least as likely as not related to the Veteran's service-connected back disability. He stated that the Veteran's neck pain did not begin until many years after the onset of the lower back pain, and there was no medical evidence in the literature that a lower back condition could cause or aggravate a neck condition/strain beyond the normal progression of the neck condition. The VA examiner also found it significant that a magnetic resonance imaging scan of the neck was normal in September 2011. Again, the Board affords the VA examiner's opinion highly probative value as it was clearly based on a review of the Veteran's medical history, lay statements, and outside medical literature. 

The Board acknowledges the Veteran's statements that his current cervical spine disability is related to the in-service motor vehicle accident and/or his service-connected mechanical low back pain. In certain unique instances, lay testimony may be competent to establish medical etiology or nexus. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). However, the evidence does not show that the Veteran possesses the requisite training or credentials needed to render a competent opinion as to the medical causation of a cervical strain or degenerative disk disease. Grottveit v. Brown, 5 Vet. App. 91, 93 (1993). Here, the Board finds that any possible relationship between a current cervical spine disability and an in-service event or injury is not something for which a layman is competent to provide an opinion. See Barr v. Nicholson, 21 Vet. App. 303, 307 (2007) (noting that lay testimony is competent to establish observable symptomatology but not competent to establish medical etiology or render medical opinions). As such, the Veteran's lay opinion does not constitute competent medical evidence and lacks probative value. In addition, a veteran's own conclusion stated in support of his claim that his present disability is secondary to his service-connected disability is not competent evidence as to the issue of medical causation of a cervical strain or degenerative disk disease. See 38 C.F.R. § 3.159; see also Grivois v. Brown, 6 Vet. App. 136 (1994). Thus, a medical opinion is needed to connect one medical condition to another medical condition. In this case, the competent, probative medical evidence provides a negative opinion concerning a nexus between any cervical spine disability and the service-connected mechanical low back pain. 

The Board also notes that degenerative disc disease, or arthritis, is one of the conditions explicitly recognized as chronic under 38 C.F.R. § 3.309(a). Therefore, the Veteran's statements regarding continuity of symptomatology may be sufficient for purposes of establishing service connection. Walker, 708 F.3d at 1338. Here, however, the Board finds the evidence does not support the Veteran's assertions that he has experienced chronic neck pain since any in-service event or injury. As noted above, the first notation of back complaints is found in a treatment record dated in 2001, approximately 33 years following separation from service. This prolonged period without complaints or treatment is evidence for consideration in determining continuity of symptomatology and weighs against the claim herein. See Mense v. Derwinski, 1 Vet. App. 354, 356 (1991). In addition, this period indicates that arthritis may not be presumed to have been incurred in service as it did not manifest to a compensable degree within one year of discharge from service. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309. Furthermore, as detailed above, the Veteran's statements regarding the origin and onset of his neck pain have been inconsistent during the pendency of the appeal. See Caluza v. Brown, 7 Vet. App. 498, 511 (1995). Finally, the Board finds the January 2014 VA examiner's conclusions regarding the nature of the Veteran's in-service injuries carries significant probative value. Therefore, the Board finds the Veteran's lay statements with respect to continuity of symptomatology are of little probative value and are insufficient for purposes of establishing entitlement to service connection.

Based on the foregoing, the Board finds the preponderance of the evidence is against a grant of service connection for a cervical spine disability, to include as secondary to service-connected mechanical low back pain. In reaching the above conclusion, the Board has considered the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claim, the benefit of the doubt doctrine is not applicable in the instant appeal, and service connection must be denied. See 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. at 55-56 (1990).


ORDER

Entitlement to a disability rating of 30 percent for mechanical low back pain is granted.

Entitlement to a disability rating of 10 percent for radiculopathy of the bilateral lower extremities is granted.

Entitlement to service connection for a cervical spine disability, to include as secondary to service-connected mechanical low back pain, is denied.



____________________________________________
ROBERT C. SCHARNBERGER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs